IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS C. RECTOR, | ) | CASE NO. 5:07CV1229 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| JEFFREY WOLFE, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Thomas C. Rector ("Rector") petitions this court for a writ of habeas corpus filed pursuant

to 28 U.S.C. § 2254 on April 25, 2007.  Rector is in the custody of the Ohio Department of

Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State*

*of Ohio v. Rector*, Case No. 00CR4182 (Carroll County 2000).  For the reasons given below

the magistrate judge recommends that the petition be denied.

I

On November 1, 2000, the Third Term of the Carroll County grand jury indicted

Rector on five counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b).  The state

appellate court reviewing Rector's conviction described the following facts as relevant to

the case:

> {¶ 3} Paul Vogley ["Vogley"] married Carrie Rosenberger in 1992.  That same year,
> the couple gave birth to their only child.  Unfortunately, the marriage did not last and
> the two were divorced in 1994.  Subsequently, Carrie was married twice more, the

third time to Rector.  She and Rector resided in Carrollton, Ohio.

{¶ 4} At the time of Paul and Carrie's divorce, the court ordered standard visitation. However, the couple arranged their own agreement on visitation.  In 1997, the couple agreed to let the child live with Paul in North Canton, Ohio, and retained their visitation by mutual arrangement.  Pursuant to that agreement, Carrie would have the child about every other weekend, on alternating holidays, and for nine or ten weeks during the summer.  For instance, the child was with Carrie and Rector during Thanksgiving 1999, portions of Christmas 1999, and the summer of 2000.

{¶ 5} On September 13, 2000, Paul came home from work and saw the child had cold sores on her mouth.  The child had been with Carrie and her husband, Rector, the weekend before.  He asked her about the cold sores and the child began crying. She then told her father Rector had licked her "pee-pee" and digitally penetrated her when she was visiting her mother in Carrollton.  Paul called the police who arranged to have the child examined at the Akron Children's Hospital.  On September 20, 2000, a nurse-practitioner at that hospital conducted that examination.  She found no physical signs of abuse.

{¶ 6} After this examination and police interviews of the child, Carrie, and Rector, the Carroll County Grand Jury returned an indictment which charged Rector with five counts of rape occurring at various times between October 1999 and October 2000. Before trial, the State moved to amend the indictment to reflect that the first count occurred over September 8, 9, and 10, 2000 rather than October 8, 9, and 10, 2000. The trial court reviewed the Grand Jury testimony and denied the motion to amend. The State then nolled that count.  At the close of the jury trial, Rector was found guilty of counts two through five.  Subsequently, the trial court held a sentencing hearing and sexual predator adjudication hearing.  After that hearing, the trial court classified Rector as a sexual predator, sentenced him to the maximum, four ten-year sentences, and ordered those sentences be served consecutively.

*State v. Rector*, 2002 WL 32098116, at *1 (Ohio App. Dec. 31, 2002).

Rector timely appealed his conviction to the state appellate court.  In his appeal

Rector raised nine assignments of error:

<u>ASSIGNMENT OF ERROR ONE</u>

THE TRIAL COURT'S FAILURE TO SUSTAIN DEFENDANT-APPELLANT'S MOTION FOR A MISTRIAL AND TO GIVE AN ADEQUATE CURATIVE INSTRUCTION TO THE JURY WAS AN ABUSE OF DISCRETION WHICH DENIED DEFENDANT-APPELLANT A FAIR TRIAL, IMPARTIAL JURY AND DUE PROCESS OF LAW.

ASSIGNMENT OF ERROR TWO

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS, EQUAL PROTECTION OF THE LAW, A FAIR TRIAL AND IMPARTIAL JURY BY THE PREJUDICIAL MISCONDUCT OF THE TRIAL COURT.

ASSIGNMENT OF ERROR THREE

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS, EQUAL PROTECTION OF THE LAW, A FAIR TRIAL AND IMPARTIAL JURY BY PROSECUTORIAL MISCONDUCT.

ASSIGNMENT OF ERROR FOUR

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW BY THE EFFECT OF THE TRIAL COURT'S RULING DENYING DEFENDANT-APPELLANT'S CONTINUING OBJECTION TO THE TESTIMONY OF BRITTANY VOGLEY ASCERTAINED BY LEADING QUESTIONS.

ASSIGNMENT OF ERROR FIVE

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW BY THE EFFECT OF THE TRIAL COURT'S RULING DENYING DEFENDANT-APPELLANT'S MOTION TO STRIKE THE TESTIMONY OF BRITTANY VOGLEY.

ASSIGNMENT OF ERROR SIX

DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL, RIGHT TO COUNSEL, DUE PROCESS AND EQUAL PROTECTION OF LAW BY INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE TRIAL AND SEXUAL PREDATOR ADJUDICATION HEARING.

ASSIGNMENT OF ERROR SEVEN

THE TRIAL COURT ERRED AS A MATTER OF LAW AND DENIED DEFENDANT-APPELLANT DUE PROCESS OF LAW WHEN THE TRIAL COURT, PURSUANT TO ORC 2950.09, FAILED TO: (1) GIVE DEFENDANT-APPELLANT REASONABLE NOTICE OF THE DATE, TIME AND LOCATION OF THE SEXUAL PREDATOR ADJUDICATION HEARING; (2) GIVE DEFENDANT-APPELLANT A REASONABLE OPPORTUNITY TO PREPARE, PRESENT EVIDENCE, TESTIFY, CALL AND EXAMINE WITNESSES AND EXPERT WITNESSES AT THE SEXUAL PREDATOR ADJUDICATION HEARING; (3) AFFORD DEFENDANT-APPELLANT THE RIGHT TO BE REPRESENTED BY EFFECTIVE ASSISTANCE OF COUNSEL AT THE SEXUAL PREDATOR ADJUDICATION HEARING; (4) DETERMINE BY

3

CLEAR AND CONVINCING EVIDENCE WHETHER DEFENDANT APPELLANT IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENCES [sic]; AND, (5) RELY ONLY ON THE EVIDENCE AND TESTIMONY ADDUCED OFFERED AT THE SEXUAL PREDATOR ADJUDICATION HEARING WHEN MAKING THE COURT'S DETERMINATION WHETHER DEFENDANT-APPELLANT IS A SEXUAL PREDATOR.

## ASSIGNMENT OF ERROR EIGHT

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS, EQUAL PROTECTION OF THE LAW, A FAIR TRIAL AND IMPARTIAL JURY BY THE EFFECT OF THE CUMULATIVE ERRORS IN THE TRIAL OF DEFENDANT-APPELLANT'S CASE.

## ASSIGNMENT OF ERROR NINE

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT ENTER [sic] JUDGMENT OF CONVICTION ON THE SECOND, THIRD, FOURTH, AND FIFTH COUNTS OF THE INDICTMENT, WHERE SUCH CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

On January 2, 2003, the appellate court overruled Rector's first through sixth, eighth and ninth assignments of error.  The state appellate court granted in part Rector's seventh assignment and remanded the matter to the trial court for a sexual predator classification hearing with proper advance notice.

Rector timely filed a notice of appeal in the Ohio Supreme Court.  In his memorandum in support of jurisdiction Rector raised eight propositions of law:

## PROPOSITION OF LAW I

WHEN AN APPELLATE ATTORNEY FAILS TO RAISE MERITORIOUS ISSUES IN A CRIMINAL DEFENDANT'S DIRECT APPEAL OF A CONVICTION, THE ATTORNEY RENDERS CONSTITUTIONALLY INADEQUATE ASSISTANCE. SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION, SECTION 16, ARTICLE I, OHIO CONSTITUTION.

A.  A CRIMINAL DEFENDANT IS DENIED THE RIGHT TO A PUBLIC TRIAL WHEN THE TRIAL COURT CLOSES THE COURTROOM FOR THE ENTIRETY OF THE CHILD VICTIM'S TESTIMONY, IN VIOLATION OF A

4

DEFENDANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW. SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE 1, OHIO CONSTITUTION.

B.  TRIAL COUNSEL PROVIDES CONSTITUTIONALLY INEFFECTIVE ASSISTANCE WHEN COUNSEL FAILS TO OBJECT TO THE CLOSURE OF THE COURTROOM, NOTWITHSTANDING THE FACT THAT SUCH A CLOSURE IS STRUCTURAL ERROR REQUIRING REVERSAL WITHOUT REGARD TO PREJUDICE.  SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE 1, OHIO CONSTITUTION.

## PROPOSITION OF LAW II

A TRIAL COURT ERRS WHEN, OVER CONTINUING OBJECTION, IT ALLOWS THE USE OF LEADING QUESTIONS TO ADDUCE THE VAST MAJORITY OF EVIDENCE IN SUPPORT OF A CONVICTION, IN VIOLATION OF A DEFENDANT'S RIGHTS TO CONFRONTATION OF WITNESSES, A FAIR TRIAL, AND DUE PROCESS OF LAW.  FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

## PROPOSITION OF LAW III

WHEN A WITNESS ADMITS THAT THE TESTIMONY GIVEN IS THE PRODUCT OF THE MEMORIZATION OF A THIRD PARTY'S RENDITION OF EVENTS AND NOT THE PRODUCT OF ACTUAL RECOLLECTION, IT IS ERROR FOR THE TRIAL COURT TO DENY A PROPER MOTION TO STRIKE THAT WITNESS' TESTIMONY, AND A VIOLATION OF A DEFENDANT'S RIGHTS TO CONFRONTATION OF WITNESSES, A FAIR TRIAL, AND DUE PROCESS OF LAW. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

## PROPOSITION OF LAW IV

REPEATED ACTS OF PROSECUTORIAL MISCONDUCT- VOUCHING FOR THE CREDIBILITY OF WITNESSES, RIDICULING DEFENSE WITNESSES, AND APPEALING TO THE JURY ON THE BASIS OF PASSION INSTEAD OF REASON- OPERATE TO DENY A CRIMINAL DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.  FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

## PROPOSITION OF LAW V

A TRIAL COURT COMMITS PLAIN ERROR WHEN, DURING THE PRESENTATION TO THE JURY OF THE SOLE DEFENSE WITNESS, THE TRIAL

COURT DIRECTS TO THE WITNESS COMMENTS EVIDENCING A PROFOUND DISDAIN FOR THE WITNESS.  SUCH PLAIN ERROR VIOLATES THE DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

### PROPOSITION OF LAW VI

A TRIAL COURT ERRS WHEN IT DENIES A PROPER MOTION FOR MISTRIAL MADE WHEN IRRELEVANT AND PREJUDICIAL EVIDENCE, WHICH SUPPORTS ONLY A NOLLED COUNT OF THE INDICTMENT, IS PRESENTED TO THE JURY. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

### PROPOSITION OF LAW VII

A TRIAL COURT ERRS WHEN IT ACCEPTS A JURY'S GUILTY VERDICTS IN THE ABSENCE OF SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS. DUE PROCESS CLAUSE, FOURTEENTH AMENDMENT, U.S. CONSTITUTION; SECTINO 16, ARTICLE I AND SECTION 3(B)(3), ARTICLE IV, OHIO CONSTITUTION; R.C. 2901.05(A).

### PROPOSITION OF LAW VIII

WHEN THE CUMULATIVE EFFECT OF TRIAL ERROR RENDERS A CRIMINAL TRIAL FUNDAMENTALLY UNFAIR, A NEW TRIAL MUST BE HAD. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, AND 16, ARTICLE I, OHIO CONSTITUTION.

On May 16, 2003, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving a substantial constitutional question.

On April 2, 2003, Rector filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B). Rector alleged that appellate counsel was ineffective for failing to raise the following three assignments of error in his application:

### ASSIGNMENT OF ERROR ONE

THOMAS RECTOR WAS DENIED HIS CONSTITUTIONAL RIGHT TO A PUBLIC TRIAL WHEN THE TRIAL COURT CLOSED THE COURTROOM FOR THE ENTIRETY OF THE ALLEGED VICTIM'S TESTIMONY.  SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I,

6

OHIO CONSTITUTION.

### ASSIGNMENT OF ERROR TWO

THOMAS RECTOR WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO OBJECT TO THE CLOSURE OF THE COURTROOM, NOTWITHSTANDING THE FACT THAT SUCH A CLOSURE IS STRUCTURAL ERROR REQUIRING REVERSAL WITHOUT REGARD TO PREJUDICE. SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ORDERED THE CLOSURE OF THE COURTROOM, FOR THE ENTIRETY OF THE ALLEGED VICTIM'S TESTIMONY, IN VIOLATION OF MR. RECTOR'S RIGHT TO A PUBLIC TRIAL AND DUE PROCESS OF LAW. SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.

On October 1, 2003, the state appellate court denied Rector's application to reopen, finding his assignments of error to be without merit. Rector timely moved for reconsideration, and the court overruled his motion on October 22, 2003. On February 9, 2005, Rector again moved for reconsideration, and the state appellate court denied this application to reconsider as untimely.

Rector timely filed in the Ohio Supreme Court a notice of appeal of the appellate court's October 22, 2003 decision. In his memorandum in support of jurisdiction, Rector raised one proposition of law:

### PROPOSITION OF LAW I

WHEN AN APPELLATE ATTORNEY FAILS TO RAISE MERITORIOUS ISSUES IN A CRIMINAL DEFENDANT'S DIRECT APPEAL OF A CONVICTION, THE ATTORNEY RENDERS CONSTITUTIONALLY INADEQUATE ASSISTANCE. SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.

> A.  A CRIMINAL DEFENDANT IS DENIED THE RIGHT TO A PUBLIC TRIAL WHEN THE TRIAL COURT CLOSES THE COURTROOM FOR THE ENTIRETY OF THE CHILD VICTIM'S TESTIMONY, IN VIOLATION OF A DEFENDANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW. SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.
>
> B.  TRIAL COUNSEL PROVIDES CONSTITUTIONALLY INEFFECTIVE ASSISTANCE WHEN COUNSEL FAILS TO OBJECT TO THE CLOSURE OF THE COURTROOM, NOTWITHSTANDING THE FACT THAT SUCH A CLOSURE IS STRUCTURAL ERROR REQUIRING REVERSAL WITHOUT REGARD TO PREJUDICE.  SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.
>
> C.  A TRIAL COURT COMMITS PLAIN ERROR WHEN IT ORDERS THE CLOSURE OF THE COURTROOM FOR THE ENTIRETY OF THE ALLEGED VICTIM'S TESTIMONY, IN VIOLATION OF A DEFENDANT'S RIGHT TO A PUBLIC TRIAL AND DUE PROCESS OF LAW.  SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.

The Ohio Supreme Court dismissed the appeal on January 21, 2004 as not involving a substantial constitutional question.

On April 20, 2004, Rector filed a petition for a writ of certiorari in the Supreme Court. On June 28, 2004, the Court denied Rector's petition.

On December 10, 2001, Rector filed in the trial court a petition to vacate pursuant to Ohio Rev. Code § 2953.21.  Rector claimed that trial counsel provided ineffective assistance by failing to call several witnesses whose testimony could have resulted in an acquittal.  On March 6, 2002 the trial court dismissed the petition on the merits without holding an evidentiary hearing.

Rector timely appealed the trial court's dismissal of his motion to vacate.  Rector raised one assignment of error on appeal:

<u>ASSIGNMENT OF ERROR ONE</u>

8

THE TRIAL COURT ERRED IN DISMISSING MR. RECTOR'S POSTCONVICTION PETITION WITHOUT AN EVIDENTIARY HEARING BECAUSE MR. RECTOR PROVIDED SUFFICIENT EVIDENCE THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

On June 19, 2003, the state appellate court reversed the trial court for failing to hold an evidentiary hearing and remanded the case for reconsideration after holding a hearing.

The trial court held an evidentiary hearing on December 16, 2003.  On August 30, 2004, the trial court denied Rector's petition to vacate.

Rector timely appealed the denial of his petition to vacate.  Rector raised one assignment of error on appeal:

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN DENYING MR. RECTOR'S POSTCONVICTION PETITION BECAUSE THE TOTALITY OF THE EVIDENCE PRESENTED AT TRIAL AND SUBSEQUENT TO THE TRIAL DEMONSTRATES THAT MR. RECTOR WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.  SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION SIXTEEN, ARTICLE I OF THE OHIO CONSTITUTION.

On December 22, 2005, the state appellate court affirmed the judgment of the trial court.

Rector filed a notice of appeal in the Ohio Supreme Court on February 3, 2006.  In his memorandum in support of jurisdiction, Rector asserted one proposition of law:

### PROPOSITION OF LAW I

IN ORDER TO PREVAIL ON A CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, A POSTCONVICTION PETITIONER NEED NOT DEMONSTRATE THAT THE EVIDENCE WHICH TRIAL COUNSEL FAILED TO PRESENT WOULD HAVE RENDERED THE STATE'S CASE INSUFFICIENT AS A MATTER OF LAW. RATHER, THE PETITIONER NEED ONLY DEMONSTRATE A REASONABLE PROBABILITY OF A DIFFERENT RESULT AT TRIAL, HAD THE EVIDENCE IN QUESTION BEEN PRESENTED.  SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION SIXTEEN, ARTICLE I OF THE OHIO CONSTITUTION.

On April 26, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the

appeal as not involving any substantial constitutional question.

Rector filed a petition for a federal writ of habeas corpus on April 25, 2007. Rector's

petition asserts seven grounds for relief:

**Ground one:** Petitioner's Ground One consists of three interrelated claims under the 6th and 14th Amendments. First, the trial court denied Mr. Rector's rights to a public trial and to due process when it closed the courtroom for the testimony of the State's key witness, and did so without making any findings to warrant closure or inquiring into less drastic alternatives. Second, trial counsel provided ineffective assistance in failing to object to the closure of the courtroom. Third, Mr. Rector's appellate counsel provided ineffective assistance in failing to assert as error on appeal the substantive public-trial/due-process claim and the ineffective-assistance-of-counsel claim arising from trial counsel's failure to challenge the closure.

**Ground two:** Mr. Rector's trial counsel provided ineffective assistance, in violation of the 6th and 14th Amendments, by failing to present available testimony that would have directly contradicted the State's case as to the timing, manner, and location of the alleged assaults, and that would have undermined the credibility of the State's witnesses. There is a reasonable probability that, had the jury been aware of this testimony, it would have acquitted Mr. Rector on at least two, if not all, of the counts.

**Ground three**: The trial court denied Mr. Rector's rights to confrontation and due process in violation of the 5th, 6th, and 14th Amendments when it: 1) permitted the State, over continuing objections, to adduce the bulk of its direct evidence by the prejudicial use of leading questions in the direct examination of B.V.; and 2) overruled his motion to strike B.V.'s testimony when she admitted that her testimony was the product of a third party's account of the events, rather than her actual recollection.

**Ground four**: The trial court violated Mr. Rector's rights under the 5th, 6th, and 14th Amendments when it denied his motion for a mistrial and overruled his objections to testimony and argument regarding Count One of the indictment, which had been dismissed.

**Ground five**: Repeated acts of prosecutorial misconduct- vouching for witnesses, shifting the burden of proof, denigrating defense witnesses, and appealing to juror passion- deprived Mr. Rector of due process and a fair trial under the 5th, 6th, and 14th Amendments.

**Ground six**: When the trial court made comments on the record in the presence of the jury to the sole defense witness expressing the court's disdain for the witness, it violated Mr. Rector's right to due process and a fair trial under the 6th and 14th

Amendments.

**Ground seven**: The cumulative effect of the errors in Mr. Rector's trial deprived him of his right to due process and a fundamentally fair trial under the 14th Amendment.

Respondent filed an Answer on June 29, 2007 (Docket #6).  Rector filed a Traverse on August 1, 2007 (Docket # 8).  Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).  Rector was convicted in the court of common pleas in Carroll County, and Rector filed his writ of habeas corpus in the Northern District of Ohio.  This court has jurisdiction over Rector's petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All Rector's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining

11

state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Rector has no remaining state remedies for his claims.  Because Rector has no remaining state remedies, his claims have been exhausted.

D.   *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his or her constitutional claims to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

12

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent argues that Rector has procedurally defaulted the first two parts of his first ground for relief and his third and the sixth grounds for relief in their entirety.  Rector's first ground for relief contends that (1) his rights to a public trial and due process of law were violated when the trial court closed the courtroom for the testimony of the alleged victim ("BV"); (2) trial counsel was ineffective for failing to object to the closure; and (3) appellate counsel was ineffective for failing to assert as error trial counsel's failure to object. With the exception of the claim of ineffective assistance of appellate counsel, Rector has procedurally defaulted these claims because he failed to present these claims to the state appellate court before presenting them to the Ohio Supreme Court.  Rector raised these claims in his motion to reopen pursuant to Ohio App. R. 26(B), but only as to instances of appellate counsel's ineffective representation, not as free-standing claims.

Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  It is unlikely that the Ohio Supreme Court would reach the merits of a claim that was not raised in the underlying appellate proceeding.  In the instant  case, the Ohio Supreme Court did not explain its decision dismissing Rector's claims.  When a state court is silent as to the reasons for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar*." Simpson v. Sparkman*,

13

94 F.3d 199, 203 (6th Cir. 1996).  Because Rector did not raise in the state appellate court his claims that closure of the trial court and counsel's failure to object to the closure violated his rights to due process and effective assistance of trial counsel, this court assumes that the Ohio Supreme Court denied these claims on procedural grounds.  Rector has procedurally defaulted, therefore, the first two subclaims in Rector's first ground for relief, that  closure of the trial court and counsel's failure to object to the closure violated his rights to due process and effective assistance of trial counsel.

Rector's third ground for relief contends that the trial court deprived him of due process of law in overruling his objections to the use of leading questions in direct examination of the alleged victim and in denying his motion to strike BV's testimony once it became known that her testimony was the product of third party accounts of the events in question.  Rector relied exclusively on state law in raising this claim in the state courts and did not frame the claim as a federal constitutional question.  Having failed to raise the claim as a federal constitutional question in the state appellate court and in the Ohio Supreme Court, Rector failed fairly to present his claim to the highest state court in a federal constitutional context.  He has, therefore, procedurally defaulted his third ground for relief.

Rector's sixth ground for relief contends that the trial court violated his rights to due process and a fair trial when it expressed disdain for the sole defense witness before the jury.  Rector failed to object to the court's alleged error.  Under Ohio's contemporaneous objection rule, a petitioner waives an alleged error when he or she fails to make a contemporaneous objection at the time of the alleged error or errors.  The Supreme Court has held that Ohio's contemporaneous objection rule is an adequate and independent

14

ground upon which Ohio may rely to foreclose federal habeas review.  *Engle v. Isaac*, 456 U.S. 107, 124-129 (1982). Rector has procedurally defaulted his sixth ground for relief.[1]

For these reasons the magistrate judge recommends that the court dismiss Rector's first two subclaims in his first ground for relief and his third and sixth grounds for relief in their entirety.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct.,

---

[1]  The state appellate court noted trial counsel's failure contemporaneously to object but considered the trial court's comments using a plain error standard.  Plain error review after noting a default does not allow a federal court to excuse the procedural default.  *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000).

15

at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.*  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.*  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Rector's remaining grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

16

*A.  Ground one:  Whether appellate counsel provided ineffective assistance.*

Rector argues in the third subclaim in his first ground for relief that appellate counsel was ineffective for failing to raise as error on appeal that the trial court erred in closing the courtroom during BV's testimony and that trial counsel was ineffective for failing to challenge the closure.  Respondent answers that Rector's appellate counsel was not ineffective for failing to raise these issues.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).  Appellant's counsel is ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

17

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167.  Appellate counsel must exercise reasonable professional judgment when determining what issues to raise on appeal. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure

18

that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); see also *Groseclose*, 130 F.3d at 1168.

Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the proceeding was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

The state appellate court reviewing Rector's claims of ineffective assistance of appellate counsel opined the following:

> {¶ 8} In determining whether to reopen an appeal, we utilize the regular two-part test for ineffective assistance of counsel. *State v. Burke,* 97 Ohio St.3d 55, *2002-Ohio-5310,* at ¶ 5, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, appellant must show deficient performance and that there is a reasonable probability that, but for the deficiency, the result of the trial would have been different. *Id.*

> {¶ 9} We start our analysis by distinguishing the United States Supreme Court case of *Waller v. Georgia* from the case at bar. First, *Waller* dealt with exclusion of the public from the *entire* hearing. See *United States v. Osborne* (1995), 68 F.3d 94, 9-11 (distinguishing *Waller* in this manner and citing other circuits that also refuse to apply the four-part *Waller* test to partial closings and instead apply a substantial reason test). In the case at bar, exclusion occurred only as to one witness. In fact, the Supreme Court advocates closing only certain portions of a hearing as did the court in this case. *Waller* at 40.

> {¶ 10} Second, the defendant in *Waller* specifically objected to the court's closure, whereas Rector made no objection. The *Waller* Court specifically limited its holding

19

by stating, "In sum, we hold that under the Sixth Amendment any closure of a suppression hearing **over the objections of the accused** must meet the tests set out in *Press-Enterprise* * * *." *Id.* at 39 (emphasis added). Thus, the four-prong test for closure set forth in *Waller* applies only to those cases where the defendant objects.

{¶ 11} As such, the cases that (in dicta) cite *Waller* as an example of structural error necessarily only refer to a denial, over the objection, of the right to public trial wherein the closure occurs throughout the whole proceeding, as opposed to an unobjected closure of the courtroom for one witness.  See, e.g., *Arizona v. Fulminante* (1991), 499 U.S. 270, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302; *Neder at* 8.  The very definition of structural error as set forth in these cases is inapplicable to the circumstances in the case at bar.  Structural error is characterized by the "entire conduct of the trial from beginning to end [being] obviously affected * * *." *Fulminante* at 309-310.  For instance, total deprivation of the right to counsel throughout the trial has been said to affect the entire trial structurally. *Id.* Structural error is a constitutional deprivation which affects the framework of the whole trial rather than simply an error in the trial process itself. *Id.* at 310.  Structural error is said to infect the entire trial process. *Neder* at 8.  This definition may very well fit a case where the defendant is wholly denied the right to a public trial over his objection.  However, the definition does not fit a case where the courtroom is closed for one witness and where the defendant fails to object.  In the latter case, the "entire trial process" is not infected.

{¶ 12} Moreover, appellant claims that the United States Supreme Court refuses to apply the harmless error doctrine to structural errors, citing *Neder* and *Fulminante.* Yet, the United States Supreme Court has basically stated that structural error does not preclude the application of the doctrine of *plain error.  Johnson v. United States* (1997), 520 U.S. 461, 468-470, 117 S.Ct. 1544, --- L.Ed.2d ----, ---- - ----, 137 L.Ed. 718.

*         *         *         *         *

[N]o objection was entered to the trial court's decision to clear the courtroom during the eight-year-old victim's testimony.  Hence, the plain error doctrine applies, and we find no plain error as the outcome would not clearly have been different but for the alleged error.  Plain error is a discretionary decision which must be made with utmost caution under only exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Noling,* 98 Ohio St.3d 44, *2002-Ohio-7044,* at ¶ 62; Crim.R. 52(B).  No circumstances here justify reversal for plain error or reopening to evaluate the doctrine.

{¶ 19} In fact, appellant's argument herein does not even allege prejudice, rather he merely relies on what we found to be an erroneous interpretation of the public trial doctrine as it relates to structural error.  We note that it appears the decision to clear

the courtroom was discussed off the record at some point.  (Tr. 176).  For all we know, the details of this discussion could entail acquiescence or encouragement by appellant.  Appellant could have been totally satisfied with the trial court's decision that bystanders, such as his wife and other family members, would not be able to hear first-hand what he did to his young step-daughter.

{¶ 20} We conclude that appellate counsel was not ineffective for failing to raise the temporary closing of the courtroom as an assignment of error.  Appellate counsel had already raised nine assignments of error in an eighty-page brief, which this court broke into eleven separate issues, some of which had multiple subissues.  In fact, this court reversed and remanded on the sexual predator issue.  Counsel's performance was not deficient, and even if it were, such deficiency would not have undermined this court's confidence in the outcome of the trial due to our analysis of the relevant case law.

*State v. Rector*, 2003 WL 22331979, at *2-*5 (Ohio App. Oct. 1, 2003) (emphasis in the original).

The state appellate court found that Rector's appellate counsel's performance was not deficient and that Rector was not prejudiced by appellate counsel's alleged errors. Rector responds that the state appellate court's determination that appellate counsel was not ineffective was erroneous because the state court failed properly to apply *Waller*. According to Rector, the state court erred in distinguishing *Waller* from Rector's case on the basis of whether the closure to the public was complete or partial because *Waller* itself did not make such a distinction.  Rector argues that the court should have applied the four-part test required by *Waller* even though the closure was partial, and the court failed to do so.  Rector concludes, therefore, that the court's closure to the public of the testimony of the alleged victim was structural error.

Rector's assertion that the state appellate court failed properly to apply *Waller* is unavailing.  A federal habeas court may only find that a decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by a Supreme

Court holding on materially indistinguishable facts.  The facts in *Waller* are materially distinguishable from the facts of Rector's case.  The holding in *Waller* was as follows: "under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in Press-Enterprise and its predecessors." *Waller*, 467 U.S. at 47.  Rector's trial attorney did not object to the closure of the courtroom.  The test described in *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984), therefore, is at least arguably not applicable to the court's decision to close part of the proceedings in Rector's case.  As the state appellate court did not reach a conclusion opposite to that reached by a Supreme Court holding on materially indistinguishable facts, this court may not overturn its decision.  Thus, Rector's appellate attorney was not ineffective for failing to assert as error the trial court's closure to the public of BV's testimony, as any claim of error on that ground would have been fruitless.

Nor has Rector shown that the appellate attorney was ineffective for asserting as ineffective assistance of counsel trial counsel's failure to object to the partial closure.  Trial counsel could only have been found to have been ineffective if counsel's performance fell below an objective standard of reasonableness and prejudiced Rector.  Clearly, trial counsel had an important reason *not* to object to the closure:  Any objection might well have been looked upon unfavorably by the jury as an attempt to hold an alleged victim of tender years up to public scrutiny on a sensitive matter.  This consideration prevents the court from finding that trial counsel clearly erred in deciding not to object to the closure.  Moreover, Rector can only show that he was prejudiced by the alleged error of trial counsel by demonstrating that had the court applied the recommended four-part test, it would not have closed the courtroom and the jury would have reached a different result.  Rector does

22

not even attempt to make this showing.

Because Rector has not shown that his appellate counsel was ineffective for failing to assert as error the partial closure of the trial or trial counsel's failure to object to that closure, the magistrate judge recommends that the court overrule the remainder of Rector's first ground for relief.

B.     *Ground two:  Whether trial counsel provided ineffective assistance in failing to present certain testimony*

Rector argues in his second ground for habeas relief that trial counsel provided ineffective assistance for failure to present testimony which Rector claims might have acquitted him.  Respondent answers that the state appellate court reviewing the decision did not rule contrary to clearly established law or unreasonably apply established law.

The state appellate court reviewing Rector's claim of ineffective assistance of trial counsel opined:

> {¶ 49} As stated earlier, Appellant espouses two theories in his motion for postconviction relief.  The first theory is that counsel failed to call witnesses who could have provided an alibi for the times and places that two of rapes occurred. The second is that Paul Vogley fabricated the rape charges and somehow was able to manipulate the victim and the prosecutor's office into collaborating with the fabrication.  The testimony presented at the postconviction relief hearing, though, primarily works to discredit these two theories.  The testimony of Carrie Rector, Atlee Rosenberger II, and Delbert Rector, may have helped to narrow the time frame and location of the crimes, but these witnesses did not present a cogent alibi to the entire periods of time covered in the indictment, and their testimony essentially confirmed the testimony of Paul Vogley concerning the whereabouts of the child on Thanksgiving and Christmas Eve.  It is unclear how these witnesses could have been used to demonstrate that Paul Vogley had somehow fabricated or induced the child to lie about the rape charges, when their testimony tends to support that Paul Vogley was telling the truth at trial.

> {¶ 50} Furthermore, there are significant credibility issues pertaining to all five of Appellant's witnesses.  A trial court is called upon to weigh the credibility of witnesses in postconviction relief proceedings. *State v. Otte,* 8th Dist. No. 84455, 2005-Ohio-100.  Although the trial court did not explicitly state that he disbelieved

the witnesses, it is clear that the trial court did not find them to be credible enough to undermine the victim's testimony at trial. Carrie Rector's testimony was so vague that it was difficult to determine any particular details that she remembered. Carol Zorger's testimony is problematic because she never explained why she had not previously divulged her conversation with Paul Vogley and his supposed admission that he falsely charged someone of fondling his daughter. Atlee Rosenberger III appeared to be biased when he revealed his antagonism toward Paul Vogley. His theory that Paul Vogley somehow fabricated the rape charges to prevent Carrie from exercising visitation is illogical, given that Carrie had unlimited visitation rights and that Paul Vogley never attempted to interfere with visitation. Atlee Rosenberger II admitted that his memory of the events of 1999 was very faulty. Finally, Delbert Rector is Appellant's father, which raises the question whether his testimony was biased. These credibility problems support the trial court's ultimate conclusion that these witnesses would not have altered the outcome of the trial. Although we have not attempted to weigh the credibility of these witnesses, we do note these credibility factors as additional reasons for understanding the judgment of the trial court.

{¶ 51} Ultimately, the only piece of evidence that is significant throughout these postconviction proceedings is Carol Zorger's hearsay testimony that Paul Vogley allegedly admitted fabricating sexual assault charges against someone other than Appellant. The entire relevant part of this brief testimony has already been quoted. The testimony is vague, and Carol Zorger could not remember exactly when Paul Vogley supposedly made the statement. Nevertheless, if she had told counsel about this alleged conversation, and if counsel had then decided not to use it, it is possible such a decision might have had some impact on a case based almost entirely on the testimony of an eight-year old child victim. In other words, an argument may be made that this testimony might have satisfied the second prong of *Strickland,* namely, that counsel's actions prejudiced the defendant and created a reasonable probability that the result of the trial would have been different.

{¶ 52} Carol Zorger, though, never testified that she told anyone about her alleged conversation with Paul Vogley. Thus, the ineffective assistance of counsel claim that Appellant is raising on appeal must be that counsel should have somehow anticipated that Paul Vogley had such a conversation with someone, and then should have assumed that Carol Zorger was that person, even though she had never mentioned such a conversation to anyone. Ultimately, Appellant's argument is more akin to an alleged failure of counsel to fully investigate the facts rather than an argument of faulty trial tactics. A court, "will not infer a failure to investigate a defense by counsel from a silent record." *State v. Skatzes,* 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 193.

{¶ 53} There is nothing in Appellant's evidence that would have led counsel to randomly ask Carol Zorger if she knew about Paul Vogley fabricating sexual assault allegations. Furthermore, Appellant did not provide even the slightest evidence that Paul Vogley actually tried to manipulate his daughter to alter her testimony. The

24

entire inference of manipulation must be premised on the sole fact that Paul Vogley was the residential parent of the victim, and not on any direct evidence.  Appellant did attempt to infer at trial that the prosecutor may have drafted the victim's testimony and then had her memorize it, but there was nothing linking Paul Vogley to the prosecutor's actions.  Based on the evidence in the record, we cannot conclude that reasonably competent counsel would have uncovered or pursued the accusations against Paul Vogley, nor would reasonable, competent counsel have been able to use such information at trial.

{¶ 54} It is apparent that Appellant's theories for supporting postconviction relief are founded on inferences built upon other inferences, and upon impossible assumptions about what reasonably, competent counsel would do.

{¶ 55} Finally, even if we assume that counsel knew of all these witnesses, knew the content of their potential testimony, and made a conscious choice to exclude them, there remains the valid presumption that counsel's trial decisions were tactical choices.  As mentioned earlier, trial tactics rarely can be used to establish ineffective assistance of counsel.  As the trial court points out, Appellant's counsel did attempt to discredit the victim at trial by creating the inference that the prosecutor had composed notes that the child memorized.  Now, in these postconviction proceedings, Appellant argues that trial counsel should have concentrated on discrediting Paul Vogley in order to undermine the victim's testimony.  Given the paucity of evidence that Appellant could rely on to discredit Paul Vogley, and given that some of his witnesses would actually have supported Paul Vogley's trial testimony, it would have been a difficult and questionable strategy to employ at trial.  Nevertheless, both strategies could have been used at trial, and counsel picked one of them over the other.  It is clear from the record that counsel did have a trial strategy, did attempt to discredit the victim at trial, and concentrated on the lack of physical evidence to overcome the victim's testimony.  The fact that another attorney may have used a different strategy is not sufficient to establish ineffective assistance of counsel.

{¶ 56} Appellant's evidence does not establish that his trial counsel was ineffective either in its trial tactics or in its presumed failure to uncover the content of the evidence produced at the December 16, 2003, hearing.  Thus, Appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.

*State v. Rector*, 2005 WL 3537687, at *9-11 (Ohio App. Dec, 21, 2005).

Rector responds that the state appellate court erred in finding that trial counsel was

not ineffective because two of the four alleged rapes could not have occurred on the dates

alleged by the state at trial and trial counsel's pretrial investigation and preparation as to

this matter were deficient.  Moreover, Rector argues that the appellate court erred in requiring Rector to provide an alibi for the entire period alleged in the indictments rather than on the dates alleged by the state at trial, and this required Rector to establish ineffective assistance of trial counsel by showing that the state's case was insufficient as a matter of law rather than merely proving that trial counsel's performance prejudiced Rector.  Rector relies on the following facts in making these arguments:

1.   BV was never at Tom and Carrie Rector's residence on Christmas Eve or Christmas 1999, and she certainly did not spend the night there on either occasion.  Rather, she attended the Thanksgiving and Christmas meals at the home of Tom Rector's parents, Donna and Delbert Rector.  Both Carrie Rector and Delbert Rector testified that they transported [BV] back to her father's custody after the Thanksgiving meal, and Carrie Rector testified that they did the same after the Christmas meal.

2.   BV did not spend the night at Carrie and Tom Rector's residence from November 21 through November 27, 1999, including Thanksgiving.  As indicated above, she attended the Thanksgiving and Christmas meals at the home of Mr. Rector's parents, Donna and Delbert Rector, and returned to her father's house.

3.   Paul Vogley had a motive to lie about Mr. Rector's raping BV, and to convince BV to repeat that lie to others (i.e., he wanted to prevent BV from having further contact with Carol Zorger and Carrie Rector, because he disliked Zorger and wanted to pressure Carrie to reconcile with him).  PC Hrg. Tr. p. 29.  Further, Paul Vogley had admitted to Carol Zorger that he previously fabricated a story about another person (Jimmy Rosenberger) having fondled or abused BV.

Traverse at 11-12.

Rector errs in asserting that better investigation by counsel would have uncovered alibis for the relevant period.  Counts three and four of Rector's indictment alleged that the sexual conduct occurred on *or about* November 20, 1999 to November 27, 1999 and on *or about* December 24, 1999.  The only time the prosecutor asserted that one of the incidents occurred on a particular day within these general periods was during closing

26

arguments: "You remember Christmas.  [BV] remembers *that day* very well because that's the day she got her puppy and the puppy ran out."  Tr. at 277 (emphasis added).[2]  Prior to that remark, the prosecutor gave no indication that the rapes occurred only on Thanksgiving Day or only on Christmas Eve or Christmas Day.  Indeed, the prosecutor's opening statement included the following:

> Now [BV] may not be able to tell you specific dates, and that it was at 8:08 p.m. but I want you to remember that she was eight years old.  The defense in this case, I'm sure, will point out that [BV] can't tell you the exact date that each of these offenses occurred, but what she can tell you is exactly what he did to her and she can tell you what was going on in her life at the time.  So she can tell you when these occurred.  She can tell you what grade she was in.  She can tell you what was going on at the time, where the rest of the household members were when this happened.

Transcript of Jury Trial, March 27 & 27, 2001 ("Tr."), Answer, Exh. 46-54, p. 64.  Rector was tried more than a year after the rapes occurred.  Had Rector's attorney attempted to piece together alibis for the periods during which the rapes were alleged to have occurred, he would have been faced with the daunting task of assembling alibis for eight or more days in November and for some indefinite number of days during the Christmas holidays.  This would include the evenings of Friday, November 19, 1999; Saturday, November 20, 1999; Wednesday, December 22, 1999; Thursday, December 23, 1999; and Sunday, December 26, 1999.[3]  No testimony at trial or during the evidentiary hearing addressed

---

[2]  The prosecutor erred here. There was no evidence that the puppy *got loose* on Christmas Day, only evidence, later contradicted, that the puppy had been *given* on Christmas Day.

[3]  BV stated that the rapes questioned by Rector occurred at Rector's and C. Rector's home.  C. Rector's testimony at the evidentiary hearing held on December 16, 2003 indicated that BV did not stay with C. Rector on school nights.  The dates indicated here are dates that were not or probably were not school nights during times reasonably indicated by the indictments.

27

BV's whereabouts on those days.

Compounding Rector's trial attorney's problems was that the available testimony did not pin down the date of the alleged rapes very precisely.  BV testified at trial that two of the rapes occurred at the home of Rector and C. Rector.  Both occurred in a bedroom with an "ABC" border on the walls after BV had gone to bed at 8 p.m.  That border was replaced in 2000.  According to BV, the first rape occurred between fall and Christmas, and the second occurred during Christmas break on a day on which the puppy she had received for Christmas got out.  Vogley testified at trial that until 2000 BV was with Vogley or C. Rector alternately on holidays, generally staying with Vogley on a holiday one year then C. Rector on that holiday the next year.  BV stayed with Vogley during Thanksgiving and Christmas 1999.  However, BV sometimes alternated days with Vogley or C. Rector during the same holiday period or even split time with them during the same day on a holiday.  Thus, although on Thanksgiving and Christmas 1999 it was Vogley's turn to be with BV, this does not necessarily mean that BV spent the night at Vogley's house every night during those vacations.

The testimony at an evidentiary hearing on December 16, 2003 did little to clarify precisely when the rapes occurred.  C. Rector testified that on Thanksgiving Day 1999 Vogley dropped BV off at Rector's parents' house, and she was returned in the evening to Vogley.  Thus, BV did not spend Thanksgiving Day night with the Rectors.  C. Rector further testified that Vogley dropped BV off at Rector's parents' house on Christmas Day 1999 and that she was returned to Vogley late that evening.  BV did not spend Christmas Day evening, therefore, with the Rectors.  Rector was not left alone with BV for any length of time on Thanksgiving Day or Christmas Day 1999, nor was BV put to bed at Rector's

28

parents house on those days.  C. Vogley's mother, Carol Zorger ("Zorger"), testified that BV received the puppy in the late summer and that BV had never stayed at the Rector's home on Christmas Eve.  Thus, although testimony eliminated Thanksgiving Day, Christmas Eve, and Christmas Day as dates on which the rapes occurred, few other dates during those holiday periods were eliminated.  Moreover, Zorger's testimony about when BV received her puppy made it impossible to eliminate days during the Christmas holiday before Christmas Day as potential dates on which one of the rapes occurred.

Also, at the evidentiary hearing Rector's father, Delbert Rector, testified that BV was at his house Thanksgiving Day and Christmas Day 1999 and left both days in the afternoon.  C. Rector's father, Attlee Rosenberger, Jr. ("Rosenberger"), testified that BV visited at Rector's parents' house on Thanksgiving Day 1999 and returned to Vogley's house for the evening.  He also testified that BV did not stay overnight at the Rectors' house whenever he stayed there.  The following exchange occurred between Rosenberger and Rector's attorney:

> Q.  . . . Did any of the kids stay over at Tom and Carrie's while you were there?
>
> A.  Tom and Andrea used to stay quite often when I was there.
>
> Q.  Tom Andrew, but never [BV]?
>
> A.  Not to my recollection.
>
> Q.  Okay.  Got you.  And the long week-end you were there for Thanksgiving that's going to be Wednesday through Sunday you think?
>
> A.  Without looking at a calendar if it was a four-day week-end, I'd have to say "yes".

Transcript of state court proceedings, December 16, 2003, Answer, Exhs. 56 & 57, p. 38

(underlining in the original). This is the only testimony that established an alibi for Rector beyond Thanksgiving Day, Christmas Eve, or Christmas Day.  The difficulty with this evidence, however, is that Rosenberger never testified that, indeed, he stayed with the Rectors during the Wednesday through Sunday of Thanksgiving week 1999.  That was simply assumed by the questioner.  Finally, determining the dates of the rapes during the Thanksgiving and Christmas holidays is made more difficult by witnesses' use of "Thanksgiving" and "Christmas" to mean either those respective holiday periods or just Thanksgiving Day or Christmas Day.  It is not always clear whether a general period or a particular day is referred to in any witness's testimony.

In sum, Rector errs in asserting that testimony at trial and at the evidentiary hearing shows that two of the four rapes could not have occurred at the times alleged by the State. There is no indication that trial counsel's research or preparation was objectively deficient in this respect.  Moreover, the state appellate court did not err in gauging Rector's trial counsel's performance against the possibility of providing an alibi for the entire period alleged in the indictments rather that on the dates supposedly alleged by the state at trial. The State acknowledged in its opening the difficulty of pinpointing the rapes beyond a general period, and the only time the State specified a particular date for one of the rapes was in a single remark in closing argument.

Rector is correct that there was testimony by C. Rector's brother that Vogley wanted BV not to have contact with Zorger and testimony by Zorger that Vogley had told her that he previously falsely asserted that a relative abused BV.  Rector has not shown, however, that the state appellate court erred in stating that there was no reason for Rector's counsel to ask Zorger about Vogley's alleged prior fabrication of a sexual assault.

30

Given the above analysis, it cannot be said that Rector shows by clear and convincing evidence that the state appellate court's findings as regards the essential facts related to trial counsel's effectiveness were wrong.[4] Nor does Rector demonstrate that any of the state appellate court's conclusions of law was erroneous. In particular, Rector does not show that the state appellate court failed properly to apply the standard set forth in *Strickland* in its evaluation of trial counsel's performance. This court must accept, therefore, the state appellate court's findings of fact and conclusions of law in its determination that Rector's trial counsel was not constitutionally ineffective. For this reason the magistrate judge recommends that the court overrule Rector's second ground for relief.

C.    *Ground four: Whether trial court error deprived Rector of 5th, 6th and 14th Amendment rights*

Rector argues in his fourth ground for relief that the trial court erred in overruling objections to testimony addressing count one of the indictment after the court dismissed that charge and erred in not granting his motion for a mistrial. Respondent answers that abuse of discretion is not generally grounds for habeas relief and that Rector was not prejudiced by the court's failure to overrule Rector's objections to testimony addressing count one of the indictment.

A trial court's abuse of discretion is not, by itself, a ground for federal habeas relief. *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983); *Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) ("We can conceive of no situation in which a federal judicial determination on *habeas*

---

[4] Rector argues, *inter alia*, that the state appellate court was unconstitutionally biased against his claim that available testimony would have established an alibi during the relevant period. Given that the available testimony did *not* establish an alibi during the relevant period, the appellate court's unfavorable statements regarding Rector's claims cannot by any stretch of the imagination be said to represent unconstitutional bias.

31

collateral review that a state court, as a matter of general law, abused its discretion in denying the withdrawal motion is *therefore* a violation of the federal Constitution."). Errors by a trial court only serve as grounds for habeas relief if the error infringes on the right to a fair trial. The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). The analysis of alleged violations of the right is identical under either amendment. *Id.* "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland*, 466 U.S. at 684. "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and accused denies the latter due process of law." *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

Likewise, "federal habeas corpus relief does not lie for error of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see* also *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. *See also* 28 U.S.C. § 2241. Only when a violation of a state's evidentiary rule results in the denial of fundamental fairness, thus violating due process, will federal habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, (6th Cir. 1988); *see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).

Finally, not all violations of the right to a fair trial and fundamental fairness entitle a petitioner to habeas relief.  In *Brecht v. Abrhamson*, 507 U.S. 619 (1993), the Supreme Court held that a court considering a collateral review of a conviction should weigh constitutional "trial error" by (1) evaluating the error in the context of the entire record; (2) asking whether the trial error had a substantial and injurious effect on the jury's verdict, and (3) granting relief only if there is grave doubt about whether the error was harmless.  *Id.* at 638.  A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict.  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

The state appellate court made the following findings of fact and conclusions of law in dismissing the claims contained in Rector's fourth ground for relief:

{¶ 43} . . . [W]e will not reverse the trial court's decision to deny the motion for mistrial unless it abused its discretion. *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749.  The first step in analyzing these situations is normally determining whether the actions were improper.  *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293.  We will break from that general rule in this case.  For the following reasons, we will not delve into correctness or appropriateness of the prosecution's, the trial court's, and Rector's counsel's actions because even if those actions were improper, Rector was not prejudiced by them.  Thus, his arguments relating to the nolled count in the indictment are meritless.

{¶ 44} In this case, Rector can only point to two possible references to the nolled count of the indictment, during opening statements and its direct examination of the child.  In order to clearly explain how Rector was not prejudiced by these references, we must more fully describe the facts relating to this argument.

{¶ 45} When the prosecutor made its opening statement, the trial court had not yet ruled on the motion to amend the indictment and the State had not yet nolled the first count.  Accordingly, during her opening statement, the prosecutor informed the jury that Rector was charged with five counts of rape which occurred on five separate occasions.  After the court denied the motion to amend the indictment and the State nolled the first count, the court informed the jury that the State voluntarily dismissed count one of the indictment.

{¶ 46} During its direct examination of the child, the State asked a series of questions relating to each rape.  For example, when dealing with each separate

33

incident, the prosecutor established the approximate date of the incident, that the child was in her room, that Rector entered the room, and that he proceeded to rape her.  After dealing with the four counts of rape, the prosecutor began to establish the facts relating to the nolled count.  In doing so, it established the approximate date of the incident, that the child was in her room, and that Rector entered the room.  However, the trial court stopped the line of questioning before the prosecution could elicit any testimony relating to any bad act on that date.  It then gave a curative instruction which instructed the jury "to disregard any evidence of any additional alleged sexual conduct" besides that contained in the indictment.

{¶ 47} As Rector did not object to the court's delay in ruling on the motion to amend the indictment or the prosecutor's remarks during opening statements, we must examine these for plain error.  However, we must also review these incidents to see if Rector's counsel was ineffective for failing to object.  We cannot see how there is even a reasonable probability that but for these statements the outcome of the trial would have been different.  Indeed, we find it likely that when the trial court informed the jury that the State had voluntarily dismissed the first count in the indictment, Rector's case was strengthened in the eyes of the jury as it demonstrated the State could not prove a portion of the case it had originally brought to trial.  Furthermore, any possible taint arising from the suggestion of a fifth bad act would have been overcome by the identical nature of the other four bad acts which were properly before the jury.

{¶ 48} The same holds true for the actions complained of during direct examination of the child.  Any indication in the manner the prosecutor was establishing facts that Rector had committed a fifth rape would have been overcome by the evidence that Rector had committed four other rapes.  In addition, there were legitimate reasons for the prosecutor to engage in that line of questioning.  For instance, having the child establish when she was last over at Rector's home bolsters Paul's testimony that the child told him about the rapes after she had been at Rector's home for a weekend.  Furthermore, the trial court gave a curative instruction.  "A jury is presumed to follow the instructions given to it by the trial judge."  *State v. Loza* (1994), 71 Ohio St.3d 61, 75, 641 N.E.2d 1082.  Thus, any possible prejudice to the defendant is relieved by the trial court's curative instruction.  *LaMar* at ¶¶ 170, 182, 767 N.E.2d 166.

{¶ 49} Finally, we will not overturn Rector's conviction due to any alleged deficiency in the trial court's curative instruction.  Although Rector may have desired an instruction which did not mention "any evidence of any additional alleged sexual conduct", his counsel acknowledged the instruction was satisfactory.  The instruction was also correct.  The jury should have disregarded all evidence of alleged sexual conduct which did not occur on the dates specified in the indictment.

{¶ 50} In conclusion, we do not see how Rector was prejudiced by the actions of the prosecutor, trial court, and his counsel at trial in regard to the nolled count of the

indictment.  Accordingly, Rector's arguments relating to this count are meritless.

*State v. Rector*, 2002 WL 32098116, at *8-*9 (Ohio App. Dec. 31, 2002)

Rector replies that because the state appellate court's decision unreasonably applied federal law to an unreasonable determination of the facts, the appellate court's decision should not be accorded deference by this court.  Rector bases this argument on three alleged errors made by the appellate court in reaching its decision.

First, Rector argues. the state appellate court found that when the prosecution made its opening statement the trial court had not yet ruled on the motion to amend the indictment.  According to Rector, the court had already allowed the State to amend the indictment without informing Rector, then withdrew its ruling when Rector learned of it and objected.  The court then withheld a final ruling on the motion until after the start of trial.

Second, the state appellate court applied a plain error standard because it found that Rector had not objected to the court's delay in ruling on the motion to amend until after trial started.  Rector contends that he had, in fact, objected to the delay.  For this reason, Rector argues, the appellate court applied a more rigorous than appropriate standard of error in weighing his claims.

Third, Rector argues that the appellate court erred when it said that during the opening statement the prosecution informed the jury that Rector was charged with five counts of rape occurring on five separate occasions.  According to Rector,

> [t]his statement is only half true.  The prosecutor's description of the alleged rapes included Count One:
>
>> She's going to tell you that **on five, at least five separate occasions**, Thomas Rector came into her bedroom while she was at her mother's for visitation. . . . Now **on five separate occasions** the defendant came into her bedroom, pulled down her pants, inserted his finger into her vagina and

35

> licked her vagina.

> Trial Tr. p. 64 (emphasis added).  The jury heard this graphic description of the allegations in Count One at the initial phase of the trial.

Traverse at 27.  Moreover, Rector adds, the trial court gave an inadequate instruction to the jury when it stated after the lunchtime recess, "Record should reflect that over the lunch hour the State of Ohio voluntarily dismissed Count I of the Indictment."  *Id.* (quoting Tr. at 80).[5]

Rector's contention that these alleged errors constitute an "unreasonable determination of the facts" is mistaken.  A statement that the court had not yet ruled on a pending motion because the previous ruling had been withdrawn is technically correct.  In any case, whether the court should have said that the court had not made a *final* ruling on the motion is beside the point, as it could have made no conceivable difference to the state appellate court's decision.  In addition, the appellate court was entirely correct that Rector did not object to the court's decision to wait until lunch to review the Grand Jury testimony.  Prior to the start of Rector's trial, the following colloquy occurred between the court and Rector's trial attorney, Tom Borcoman ("Borcoman"):

> MR. BORCOMAN:  Your Honor, the State, 3 days before, 3 working days before the trial in this matter, made a request to amend the Indictment and the Bill of Particulars in this case as it applies to the original Indictment, alleging sexual conduct with the victim on the dates of September 8, 9 and 10, October 8, 9 and 10. The State is moving to amend the dates to the dates of September 8, 9 and 10.  We subsequently filed a motion in opposition to said amendment and also requesting that prior to the Court ruling on the same, that there be some examination of the Grand Jury testimony.  Our concern being that if someone, whether it be the alleged victim or it be the investigating officer in this case, if that testimony on dates is the same as originally given in the Indictment of October, the amendment would not be

---

[5]  The court also asked the prosecutor whether that was correct, and the prosecutor agreed that it was.

in order at this point.  It's been indicated that I believe these Prosecutors were not in the Grand Jury room during the testimony and that the amendment would simply be to correct a typographical error between September and October.  When we filed our motion, it was our hope that we could have this issue decided prior to the commencement of trial.  We have filed in this case a notice of alibi.  Our notice of alibi was based on the fact that one of the claimed incidents, at least in part, was while the defendant was at EOCC and supposedly had his work release prior to the dates that were alleged in the original Indictment in October, the alibi testimony potentially could apply to the dates from July 1 to August 31, although we recognize our client at that point was on the work release program[,] we felt it was essential to have a ruling on the proposed amendment and, although the court did prior to our filing an objection, allow said amendment, when we recognize is allowed by Rule 7, but (inaudible) is not a possibility at this point.  If the amendment is allowed, we will withdraw our notice of alibi.

THE COURT:  As to both dates?

MR. BORCOMAN:  We desire that the Court, if given the opportunity, would review the Grand Jury testimony as to the dates of October being in there.  Pending that review of the testimony, given the circumstances, we do reserve (inaudible) if something transpired in this review of the testimony in this case that would give rise to our alibi being (inaudible).  We would desire to renew that alibi notice at some point and we have a written notice of withdrawal of notice of alibi.

THE COURT: Well, I'll listen to the Grand Jury testimony over the lunch hour today.

Tr. at 4-6.  Rector said nothing more about the court's delay in listening to the Grand Jury testimony and ruling on the motion to amend.  Finally, the state appellate court's statement that "during her opening statement, the prosecutor informed the jury that Rector was charged with five counts of rape which occurred on five separate occasions" is entirely correct, however incomplete Rector may believe that statement to be.  Thus, Rector's contention that the trial court made an unreasonable determination of the relevant facts is erroneous.

Rector also claims that the state appellate court's analysis of prejudice potentially resulting from the jury's exposure to the state's direct examination of BV regarding the

dismissed count of rape "is flawed and represents an unreasonable application of federal law." Traverse at 27. According to Rector, the appellate court's analysis finding that any questioning approaching the subject of the dismissed count was overcome by evidence that Rector committed the first four rapes is flawed because belief in the occurrence of the other four rapes rests on BV's credibility. Rector claims that questioning leading to examining the incident underlying the dismissed count enhanced BV's credibility, thus making it more likely that the jury would believe BV as to the other four counts.

Rector's argument is unconvincing. One might argue with equal persuasiveness that eliciting testimony from BV leading to another incident then dismissing that count of the indictment and cautioning the jury not to consider any evidence regarding it *damaged* BV's credibility rather than enhanced it, as it would seem to indicate to a jury that the prosecution was not confident enough in BV's account to launch a prosecution based on it. In any case, Rector's suppositions about what effect exposure to the direct examination might have had on the jury fall very far short of the clear and convincing evidence needed to show that the court erred in determining what effect the questioning had on the jury. Rector cites no holding of the Supreme Court to show that on these facts Rector was deprived of any right guaranteed by the Constitution. This argument, therefore, is without merit.

Rector's claim that the state appellate court unreasonably applied federal law to the facts because the court inadequately scrutinized the facts is equally without merit. Rector argues that the appellate court erred in describing the nature of the questions the prosecutor asked about the count of rape that was later dismissed:

> The court excused the State's attempt to solicit the factual allegations regarding the first count on the ground that the testimony would have bolstered Vogley's testimony that BV told him about the alleged rapes when she returned from a visit. This is

38

> disingenuous.  The testimony went much further than "when she was last over at
> Rector's home."

Traverse at 28 (citations omitted).  Rector misstates the appellate court's findings.  The

state court did not find that the prosecutor merely established when BV was last at Rector's

home.  The state court made note of the ground covered by the prosecutor's questioning

when approaching the subject of the fifth rape and compared it to the pattern of questioning

used when examining the other four rapes:

> During its direct examination of the child, the State asked a series of questions
> relating to each rape.  For example, when dealing with each separate incident, the
> prosecutor established the approximate date of the incident, that the child was in her
> room, that Rector entered the room, and that he proceeded to rape her.  After
> dealing with the four counts of rape, the prosecutor began to establish the facts
> relating to the nolled count.  In doing so, it established the approximate date of the
> incident, that the child was in her room, and that Rector entered the room.
> However, the trial court stopped the line of questioning before the prosecution could
> elicit any testimony relating to any bad act on that date.

*Rector*, 2002 WL 32098116 at *8.  In addition, Rector ignores the trial court's curative

instruction to the jury to ignore any testimony that addressed any alleged sexual conduct

in the summer of 2000, the alleged time of the dismissed count.  Rector cites no Supreme

Court holding that such an instruction is inadequate to remove any taint created by the

prosecution's preliminary approach to the dismissed count of rape.  For these reasons,

Rector's claim that the state appellate court unreasonably applied federal law to the facts

because the court inadequately scrutinized the facts is without merit.

For the reasons given above, the magistrate judge recommends that the court

overrule Rector's fourth ground for relief.

D.     *Ground five: Whether prosecutorial misconduct and judicial instruction deprived
       Rector of due process*

Rector alleges that the prosecutor violated his rights to due process and trial by jury

39

when the prosecutor allegedly vouched for witnesses, shifted the burden of proof, denigrated defense witnesses, and appealed to juror passion.  Respondent answers that viewed in the totality of the circumstances, the prosecutor's comments were permissible and did not render the trial fundamentally unfair.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused."  *Id.* (citations omitted).  To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *see* also *United States v. Young*, 470 U.S. 1, 11-12 (1985) (holding that habeas relief may be granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000).  Prosecutorial misconduct is subject to harmless error analysis.  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).  On federal habeas review, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S., at 637; *see also Fry v. Pliler*, ___ U.S. ___, 127 S. Ct. 2321 (2007).

Rector argues that the prosecution improperly vouched for witnesses by twice commenting in opening statements that BV would tell the truth.  The state appellate court reviewing this claim found the following:

40

{¶ 51} Rector argues that the prosecution improperly vouched for the credibility of its witnesses during opening statements and closing arguments and, therefore, committed misconduct.  He also argues his counsel was ineffective for failing to object to this vouching.

{¶ 52} "It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused."  *State v. Williams* (1997), 79 Ohio St.3d 1, 12, 679 N.E.2d 646.  In order for the prosecutor to "vouch" for the witness, the prosecutor's statements must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue.  *State v. Keene* (1998), 81 Ohio St.3d 646, 666, 693 N.E.2d 246.  Therefore, a prosecutor may argue that certain evidence tends to make a witness more or less credible, but may not state his own belief as to whether a witness is telling the truth.  *State v. Carpenter* (1996), 116 Ohio App.3d 615, 624, 688 N.E.2d 1090.

{¶ 53} Rector claims the following two comments made during the State's opening statement improperly vouched for the credibility of a witness:

{¶ 54} "[The victim]'s not going to tell you every time she's been around the defendant something horrible has happened to her.  She makes the connection.  She's going to tell you folks the truth."

{¶ 55} "[The victim]'s going to come into this very big courtroom, sit on that witness stand, in front of Judge Martin, in front of all these attorneys, in front of you folks, the jurors, and most importantly in front of her stepfather Thomas Rector, and she's going to tell you what he did to her.  She's going to be able to do that because she's a very brave little girl and she knows she's telling the truth * * *."

{¶ 56} During the course of the trial defense counsel intimated the victim's father convinced her to make up the story for custody reasons.  During closing arguments, the State made the following statement:

{¶ 57} "[The victim's father] has custody of the child, so there is no reason why she would be making these things up."

{¶ 58} Clearly, the prosecutor's comments during closing arguments did not vouch for the witness's credibility.  Rather, these remarks were an attempt to illustrate why the witness has no motive to lie.  The Ohio Supreme Court has explained that this type of argument is not improperly vouching for a witness and, therefore, is not misconduct.  *State v. Green* (2000), 90 Ohio St.3d 352, 373-374, 738 N.E.2d 1208.  Instead, this is arguing facts which support the witness's credibility and responded to defense attacks on that credibility.  *Id.*

{¶ 59} As for the prosecutor's remarks during opening statements, it does not matter whether we conclude they were or were not improper because they did not render

Rector's trial unfair.  While the child was testifying, both parties had ample opportunity to establish or attack her credibility.  Furthermore, the prosecutor's remarks were fleeting references made during opening statements rather than points of emphasis during closing arguments.  Finally, the trial court in this case instructed the jury that opening statements and closing arguments are not evidence. These kinds of curative instructions protect a defendant's right to a fair trial.  *State v. Clayton* (Feb. 21, 2002), 8th Dist. No. 79034, at 2.  Thus, these statements, in and of themselves, did not render Rector's trial unfair.  Rector's arguments to the contrary are meritless.

*Rector*, 2002 WL 32098116 at *9-*10.  Rector fails to show that the state court erred in making these determinations.

Rector also contends that the prosecution improperly appealed to the passions of the jurors in closing arguments.  In particular, Rector cites two instances of such alleged misconduct:  "This has been very difficult for you I'm sure but we ask that you bring back the only verdict that will protect that little girl," and "The only verdict that protects [BV] and other children like her, and that's a verdict of guilty of five counts of rape."  Tr. at 289, 66. As the state appellate court observed:

> . . . Rector complains of what the prosecutor said in closing arguments.  However, a brief review of the statements show the prosecutor doing the proper thing in that context, arguing the case.  "In our adversarial system, prosecutors are not only permitted but also encouraged to argue fervently for conviction."  *State v. Wilson* (Apr. 19, 2002), 1st Dist. No. C-000670, at 6.  A prosecutor does not commit misconduct when vouching for the integrity of the state's case or by arguing for a conviction to foreclose future criminal conduct.  *State v. Nolan* (1992), 78 Ohio App.3d 564, 571, 605 N.E.2d 480.  Thus, Rector's arguments relating to these incidents are meritless.

*Rector*, 2002 WL 32098116 at *10-*11.  Rector cites no holding of the Supreme Court to show that the state court erred in finding that the prosecution did not commit misconduct in making these statements.

Rector further claims that the prosecution committed misconduct in unfairly attacking the defense's sole witness, Jon Marshall, M.D.  Specifically, Rector points to two colloquies

as instances of misconduct:

> A: That nurse is not a physician.  She doesn't examine patients.
>
> Q: Oh that's right.  As a doctor you don't have much respect for nurse/practitioners do you?
>
> A: Respect doesn't have anything to do with it.
>
> Q: You don't feel they are properly trained?
>
> A: I didn't say that.

Tr. at 254.  The other exchange to which Rector points is as follows:

> Q: And when you examined [BV] that's what she told you?
>
> A: I didn't examine her.  I was not permitted to examine her.
>
> Q: Oh, you didn't even examine her.  Okay.
>
> A: I asked to examine her and I was told I could not.

Tr. at 255.  According to Rector, the prosecutor's remarks unfairly appealed to anti-physician bias and served no legitimate purpose.

This argument is frivolous.  The prosecutor's remarks were such patent attempts to twist the witness's words that they were far more likely to create hostility toward the prosecution than appeal to any supposed "anti-physician bias."  In any event, the remarks were so inconsequential in the context of the entire trial that they scarcely merit serious consideration.

Rector's claim that the prosecution attempted to shift the burden of proof is equally absurd.  In support of this argument, Rector points to four statements made by the prosecution in closing argument:

> "Did any of the witnesses tell you why [BV] would make up a story that Tom Rector raped her?  You didn't hear that story.  You won't hear that story because there is

43

no story of why [BV] would make up such a statement."

Tr. at 275.

"There has not been one shred of testimony of why she would make this up."

Tr. at 277.

"You never heard them tell you that anything that [BV] went through prior to testifying here, anything she reviewed prior to testifying here, was inconsistent with anything that she had said before."

Tr. at 287.

"What you never heard was anything out of anyone during this trial that would say why [BV] would lie."

Tr. at 288.

This argument cannot be taken seriously.  The prosecution's statements clearly go to two components of credibility:  motive to lie[6] and consistency.  By no stretch of the imagination can the prosecution's remarks be deemed an attempt to shift the burden of proof, and Rector cites no holding of the Supreme Court which would justify such a conclusion.[7]

_____

[6]  As the state appellate court stated, "the prosecutor's comments . . . were an attempt to illustrate why the witness has no motive to lie."  *Rector*, 2002 WL 32098116 at *10.

[7]  Rector argues that the state appellate court did not properly examine the facts of the case because it failed to make specific findings addressing each alleged instance of prosecutorial misconduct.  Rector asserts, therefore, that the state appellate court's finding that Rector's trial was not fundamentally unfair is not entitled to deference.  This argument is without merit for two reasons.  First, the state appellate court explicitly addressed every alleged instance of misconduct asserted in this court except Rector's assertion that the prosecution attempted to appeal to "anti-physician bias" by its examination of the defense's expert witness.  In its opinion dismissing Rector's claims of prosecutorial misconduct, the state appellate court wrote as follows:

In addition to the forms of prosecutorial misconduct addressed above, Rector

Finally, even if Rector's arguments about prosecutorial misconduct due to remarks made in opening statements and closing argument were not meritless, they would fail because the court repeatedly provided instructions designed to cure improprieties in addressing the jury.  Prior to opening statements, the court instructed the jury as follows:

> This point in the proceedings are known as opening statements ladies and gentlemen, that's when counsel will outline what they think the evidence is going to be in this case and as I previously admonished you, what your [*sic*] about to hear from the attorneys is just argument.  It is not evidence, will not ever be consider [*sic*] by you as evidence for any purpose at any time.  You understand that?  Very well. The State always proceeds first.  Ms. Falconer your opening statement please.

Tr. at 61-62.  Prior to closing arguments, the trial court instructed the jury as follows:

> At this point in the proceedings the evidence is closed.  We have reviewed the Jury Instructions and at this point the attorneys will provide you with their closing arguments, and as I indicated yesterday, what you're about to hear from the attorneys is not evidence, will not be considered by you as evidence for any purpose, when you retire to deliberate on this case.  As I've indicated previously, the State always proceeds first.  In closing argument, the State has the option of dividing it, a portion of it before the defense delivers theirs, and then a portion following the defense's closing argument.

---

> argues the prosecution committed other forms of misconduct.  He then argues the trial court committed misconduct by allowing these actions and that counsel was ineffective for failing to object to these actions.  We conclude many of these other forms of "prosecutorial misconduct" were not actions taken by the prosecutor and Rector's arguments about those that were are frivolous.  Therefore, we find the remainder of his arguments dealing with prosecutorial misconduct are meritless.

> *         *         *         *         *

> {¶ 62} The remainder of Rector's arguments are so frivolous that they do not merit serious consideration. For example, the State made the following comment during opening statements: "It's not a case about DNA or gene profiling or gloves that fit or don't fit." Rector argues this statement "appear[s] to invite the jury to discriminate against [Rector] and circumvent the presumption of innocence", is "inexcusable", has "a tendency to mislead the jury", and is "deliberate, flagrant and not isolated."

*Rector*, 2002 WL 32098116 at *10-*11.  The state court gave Rector's claims of prosecutorial misconduct all the attention they deserved.

Tr. at 271.  In its final instructions, the trial court instructed the jury as follows:

> Evidence does not include the Indictment, opening statements or closing arguments
> of the lawyers.  Statements that were stricken by the Court or which you were
> instructed to disregard, if any, are also not evidence, and must be treated as though
> you never heard them.  You must not speculate as to why the Court sustained an
> objection to any questions, or what the answer to that question might have been.
> You may not draw any inference or speculate on the truth of any suggestion
> included in any question that was not answered.

Tr. at 292.

The state appellate court found that the prosecutor's remarks did not constitute

misconduct and did not render Rector's trial unfair.  Rector does not show that the state

court findings were erroneous.  For these reasons, the magistrate judge recommends that

the court overrule Rector's fifth ground for relief.

E.    *Ground seven: Whether cumulative error deprived Rector of due process and a
      fundamentally fair trial*

Rector contends that the cumulative effect of alleged errors in the trial deprived him

of his right to due process and a fundamentally fair trial under the Fourteenth Amendment.

Respondent answers that cumulative error is not a basis for granting habeas relief in non-

capital cases.  Respondent also answers that there is no Supreme Court precedent

obligating the state court to consider alleged trial errors cumulatively.  Respondent further

answers that in any case there are no errors to be considered cumulatively.

The Sixth Circuit has definitively decided that courts reviewing a habeas petition may

not consider cumulative trial errors in determining whether relief should be granted:

> Moore claims he is entitled to relief because of cumulative trial errors.  But we have
> held that, post-AEDPA, not even constitutional errors that would not individually
> support habeas relief can be cumulated to support habeas relief.  *See Scott v. Elo,*
> 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th
> Cir.2002) (death-penalty decision stating, "The Supreme Court has not held that
> distinct constitutional claims can be cumulated to grant habeas relief.").

46

Moore cites *Walker v. Engle* for the proposition that cumulative evidentiary errors can warrant habeas relief.  703 F.2d 959, 963 (6th Cir.1983).  But *Walker* is pre-AEDPA, and is not Supreme Court precedent, as AEDPA requires.  *See Lorraine,* 291 F.3d at 447 (noting *Walker* was pre-AEDPA and refusing to consider errors cumulatively).  Because Moore can cite no Supreme Court precedent obligating the state court to consider the alleged trial errors cumulatively, we cannot grant relief on this ground. FN4

FN4. Two of this court's unpublished post-AEDPA decisions state, in dicta, that the court may consider cumulative error in capital cases.  *See Davis v. Burt,* 100 Fed. Appx. 340, 351 n.1 (6th Cir. 2004); *Eskridge v. Konteh,* 88 Fed.Appx. 831, 836 n.1 (6th Cir. 2004).  But these cases directly contradict our binding *Lorraine* precedent, and we expressly repudiate them today.

*Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).[8]  Rector's reliance on *Walker* to the contrary is, therefore, misplaced.[9]

Because Rector requests relief for cumulative error and because this court may not grant relief on that ground, the magistrate judge recommends that the court overrule Rector's seventh ground for relief.

IV

For the reasons given above the magistrate judge recommends that the court deny Rector's petition for a writ of habeas corpus.

Date: August 28, 2007                    /s/Patricia A. Hemann
                                         Patricia A. Hemann
                                         United States Magistrate Judge

---

[8]  In *Getsy v. Mitchell*, ___ F.3d ___, 2007 WL 2118956, at *19 (6th Cir. July 25, 2007), the Sixth Circuit explicitly did *not* decide whether courts may consider cumulative error in reviewing a habeas petition.

[9]  Rector also cites *Satterwhite v. Texas*, 486 U.S. 249, 258-59 (1988).  That case does not address cumulative error.

47

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986)