# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS C. RECTOR, | ) | CASE NO. 5:07CV1229 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| JEFFREY WOLFE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Petition (ECF DKT #1) of Thomas C. Rector ("Rector") under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  Rector is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in *State of Ohio v. Rector*, Case No. 00CR4182 (Carroll County 2001), in which Rector was convicted on four counts of raping his wife's daughter ("BV").  Having exhausted all of his available state remedies, Rector now asserts seven grounds for federal habeas relief.  Rector's Petition first came before Magistrate Judge Hemann pursuant to Local Rule 72.2(b)(2).  The Magistrate Judge issued a Report and Recommendation ("R & R") on August 28, 2008, recommending that Rector's Petition be denied.  (ECF DKT #9.)  For the following reasons, the Court adopts the R & R in part and modifies in part.  The ultimate conclusion, however, remains the same: Rector's Petition is denied.

## FACTUAL BACKGROUND

On November 1, 2000, the Carroll County grand jury indicted Rector on five counts of

rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b).  The state appellate court, reviewing

Rector's conviction, described the following relevant facts:

> {¶ 3} Paul Vogley ["Vogley"] married Carrie Rosenberger in 1992. That same year, the couple gave birth to their only child.  Unfortunately, the marriage did not last and the two were divorced in 1994.  Subsequently, Carrie was married twice more, the third time to Rector.  She and Rector resided in Carrollton, Ohio.

> {¶ 4} At the time of Paul and Carrie's divorce, the court ordered standard visitation. However, the couple arranged their own agreement on visitation.  In 1997, the couple agreed to let the child live with Paul in North Canton, Ohio, and retained their visitation by mutual arrangement.  Pursuant to that agreement, Carrie would have the child about every other weekend, on alternating holidays, and for nine or ten weeks during the summer.  For instance, the child was with Carrie and Rector during Thanksgiving 1999, portions of Christmas 1999, and the summer of 2000.

> {¶ 5} On September 13, 2000, Paul came home from work and saw the child had cold sores on her mouth.  The child had been with Carrie and her husband, Rector, the weekend before.  He asked her about the cold sores and the child began crying.  She then told her father Rector had licked her "pee-pee" and digitally penetrated her when she was visiting her mother in Carrollton.  Paul called the police who arranged to have the child examined at the Akron Children's Hospital.  On September 20, 2000, a nurse-practitioner at that hospital conducted that examination.  She found no physical signs of abuse.

> {¶ 6} After this examination and police interviews of the child, Carrie, and Rector, the Carroll County Grand Jury returned an indictment which charged Rector with five counts of rape occurring at various times between October 1999 and October 2000.  Before trial, the State moved to amend the indictment to reflect that the first count occurred over September 8, 9, and 10, 2000 rather than October 8, 9, and 10, 2000.  The trial court reviewed the Grand Jury testimony and denied the motion to amend.  The State then nolled that count.  At the close of the jury trial, Rector was found guilty of counts two through five.  Subsequently, the trial court held a sentencing hearing and sexual predator adjudication hearing.  After that hearing, the trial court classified Rector as a sexual predator, sentenced him to the maximum, four ten-year sentences, and ordered those sentences be served consecutively.

*State v. Rector*, No. 01 AP 758, 2002 WL 32098116, at *1 (Ohio Ct. App. Dec. 31, 2002).

## PROCEDURAL HISTORY

Rector timely appealed his conviction to the state appellate court.  In his appeal, Rector

raised nine assignments of error:

2

<u>ASSIGNMENT OF ERROR ONE</u>

THE TRIAL COURT'S FAILURE TO SUSTAIN DEFENDANT-APPELLANT'S
MOTION FOR A MISTRIAL AND TO GIVE AN ADEQUATE CURATIVE
INSTRUCTION TO THE JURY WAS AN ABUSE OF DISCRETION WHICH
DENIED DEFENDANT-APPELLANT A FAIR TRIAL, IMPARTIAL JURY AND
DUE
PROCESS OF LAW.

<u>ASSIGNMENT OF ERROR TWO</u>

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS, EQUAL
PROTECTION OF THE LAW, A FAIR TRIAL AND IMPARTIAL JURY BY THE
PREJUDICIAL MISCONDUCT OF THE TRIAL COURT.

<u>ASSIGNMENT OF ERROR THREE</u>

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS, EQUAL
PROTECTION OF THE LAW, A FAIR TRIAL AND IMPARTIAL JURY BY
PROSECUTORIAL MISCONDUCT.

<u>ASSIGNMENT OF ERROR FOUR</u>

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW
BY THE EFFECT OF THE TRIAL COURT'S RULING DENYING DEFENDANT-
APPELLANT'S CONTINUING OBJECTION TO THE TESTIMONY OF [BV]
ASCERTAINED BY LEADING QUESTIONS.

<u>ASSIGNMENT OF ERROR FIVE</u>

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW BY
THE EFFECT OF THE TRIAL COURT'S RULING DENYING DEFENDANT-
APPELLANT'S MOTION TO STRIKE THE TESTIMONY OF [BV]

<u>ASSIGNMENT OF ERROR SIX</u>

DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL, RIGHT TO COUNSEL,
DUE PROCESS AND EQUAL PROTECTION OF LAW BY INEFFECTIVE
ASSISTANCE OF COUNSEL DURING THE TRIAL AND SEXUAL PREDATOR
ADJUDICATION HEARING.

<u>ASSIGNMENT OF ERROR SEVEN</u>

THE TRIAL COURT ERRED AS A MATTER OF LAW AND DENIED DEFENDANT-APPELLANT DUE PROCESS OF LAW WHEN THE TRIAL COURT, PURSUANT TO ORC 2950.09, FAILED TO: (1) GIVE DEFENDANT-APPELLANT REASONABLE NOTICE OF THE DATE, TIME AND LOCATION OF THE SEXUAL PREDATOR ADJUDICATION HEARING; (2) GIVE DEFENDANT-APPELLANT A REASONABLE OPPORTUNITY TO PREPARE, PRESENT EVIDENCE, TESTIFY, CALL AND EXAMINE WITNESSES AND EXPERT WITNESSES AT THE SEXUAL PREDATOR ADJUDICATION HEARING; (3) AFFORD DEFENDANT-APPELLANT THE RIGHT TO BE REPRESENTED BY EFFECTIVE ASSISTANCE OF COUNSEL AT THE SEXUAL PREDATOR ADJUDICATION HEARING; (4) DETERMINE BY CLEAR AND CONVINCING EVIDENCE WHETHER DEFENDANT APPELLANT IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENCES [sic]; AND, (5) RELY ONLY ON THE EVIDENCE AND TESTIMONY ADDUCED OFFERED AT THE SEXUAL PREDATOR ADJUDICATION HEARING WHEN MAKING THE COURT'S DETERMINATION WHETHER DEFENDANT-APPELLANT IS A SEXUAL PREDATOR.

## ASSIGNMENT OF ERROR EIGHT

THE DEFENDANT-APPELLANT WAS DEPRIVED OF DUE PROCESS, EQUAL PROTECTION OF THE LAW, A FAIR TRIAL AND IMPARTIAL JURY BY THE EFFECT OF THE CUMULATIVE ERRORS IN THE TRIAL OF DEFENDANT-APPELLANT'S CASE.

## ASSIGNMENT OF ERROR NINE

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT ENTER [sic] JUDGMENT OF CONVICTION ON THE SECOND, THIRD, FOURTH, AND FIFTH COUNTS OF THE INDICTMENT, WHERE SUCH CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

On January 2, 2003, the appellate court overruled Rector's first through sixth, eighth and ninth assignments of error.  The state appellate court granted in part Rector's seventh assignment and remanded the matter to the trial court for a sexual predator classification hearing with proper advance notice.

Rector timely filed a notice of appeal in the Ohio Supreme Court.  In his Memorandum in Support of Jurisdiction Rector raised eight propositions of law:

4

## PROPOSITION OF LAW I

WHEN AN APPELLATE ATTORNEY FAILS TO RAISE MERITORIOUS ISSUES IN
A CRIMINAL DEFENDANT'S DIRECT APPEAL OF A CONVICTION, THE
ATTORNEY RENDERS CONSTITUTIONALLY INADEQUATE ASSISTANCE.
SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION, SECTION 16,
ARTICLE I, OHIO CONSTITUTION.

> A. A CRIMINAL DEFENDANT IS DENIED THE RIGHT TO A PUBLIC
> TRIAL WHEN THE TRIAL COURT CLOSES THE COURTROOM FOR THE
> ENTIRETY OF THE CHILD VICTIM'S TESTIMONY, IN VIOLATION OF A
> DEFENDANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW.
> SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION;
> SECTION 10, ARTICLE 1, OHIO CONSTITUTION.

> B. TRIAL COUNSEL PROVIDES CONSTITUTIONALLY INEFFECTIVE
> ASSISTANCE WHEN COUNSEL FAILS TO OBJECT TO THE CLOSURE
> OF THE COURTROOM, NOTWITHSTANDING THE FACT THAT SUCH A
> CLOSURE IS STRUCTURAL ERROR REQUIRING REVERSAL WITHOUT
> REGARD TO PREJUDICE. SIXTH AND FOURTEENTH AMENDMENTS,
> U.S. CONSTITUTION; SECTION 10, ARTICLE 1, OHIO CONSTITUTION.

## PROPOSITION OF LAW II

A TRIAL COURT ERRS WHEN, OVER CONTINUING OBJECTION, IT ALLOWS
THE USE OF LEADING QUESTIONS TO ADDUCE THE VAST MAJORITY OF
EVIDENCE IN SUPPORT OF A CONVICTION, IN VIOLATION OF A
DEFENDANT'S RIGHTS TO CONFRONTATION OF WITNESSES, A FAIR TRIAL,
AND DUE PROCESS OF LAW. FIFTH, SIXTH, AND FOURTEENTH
AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, 10, AND 16, ARTICLE I,
OHIO CONSTITUTION.

## PROPOSITION OF LAW III

WHEN A WITNESS ADMITS THAT THE TESTIMONY GIVEN IS THE PRODUCT
OF THE MEMORIZATION OF A THIRD PARTY'S RENDITION OF EVENTS AND
NOT THE PRODUCT OF ACTUAL RECOLLECTION, IT IS ERROR FOR THE
TRIAL COURT TO DENY A PROPER MOTION TO STRIKE THAT WITNESS'
TESTIMONY, AND A VIOLATION OF A DEFENDANT'S RIGHTS TO
CONFRONTATION OF WITNESSES, A FAIR TRIAL, AND DUE PROCESS OF
LAW. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION;
SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

## PROPOSITION OF LAW IV

5

REPEATED ACTS OF PROSECUTORIAL MISCONDUCT- VOUCHING FOR THE
CREDIBILITY OF WITNESSES, RIDICULING DEFENSE WITNESSES, AND
APPEALING TO THE JURY ON THE BASIS OF PASSION INSTEAD OF REASON
OPERATE TO DENY A CRIMINAL DEFENDANT'S RIGHTS TO DUE PROCESS
AND A FAIR TRIAL. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S.
CONSTITUTION; SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

PROPOSITION OF LAW V

A TRIAL COURT COMMITS PLAIN ERROR WHEN, DURING THE
PRESENTATION TO THE JURY OF THE SOLE DEFENSE WITNESS, THE TRIAL
COURT DIRECTS TO THE WITNESS COMMENTS EVIDENCING A PROFOUND
DISDAIN FOR THE WITNESS. SUCH PLAIN ERROR VIOLATES THE
DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL. FIFTH, SIXTH,
AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5, 10,
AND 16, ARTICLE I, OHIO CONSTITUTION.

PROPOSITION OF LAW VI

A TRIAL COURT ERRS WHEN IT DENIES A PROPER MOTION FOR MISTRIAL
MADE WHEN IRRELEVANT AND PREJUDICIAL EVIDENCE, WHICH SUPPORTS
ONLY A NOLLED COUNT OF THE INDICTMENT, IS PRESENTED TO THE JURY.
FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION;
SECTIONS 5, 10, AND 16, ARTICLE I, OHIO CONSTITUTION.

PROPOSITION OF LAW VII

A TRIAL COURT ERRS WHEN IT ACCEPTS A JURY'S GUILTY VERDICTS IN
THE ABSENCE OF SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS.
DUE PROCESS CLAUSE, FOURTEENTH AMENDMENT, U.S. CONSTITUTION;
SECTION 16, ARTICLE I AND SECTION 3(B)(3), ARTICLE IV, OHIO
CONSTITUTION; R.C. 2901.05(A).

PROPOSITION OF LAW VIII

WHEN THE CUMULATIVE EFFECT OF TRIAL ERROR RENDERS A CRIMINAL
TRIAL FUNDAMENTALLY UNFAIR, A NEW TRIAL MUST BE HAD. FIFTH,
SIXTH, AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTIONS 5,
AND 16, ARTICLE I, OHIO CONSTITUTION.

On May 16, 2003, the Ohio Supreme Court denied leave to appeal.

On April 2, 2003, Rector filed an application to reopen his direct appeal pursuant to

6

Ohio App. R. 26(B).  Rector alleged that appellate counsel was ineffective for failing to raise

the following three assignments of error in his application:

ASSIGNMENT OF ERROR ONE

THOMAS RECTOR WAS DENIED HIS CONSTITUTIONAL RIGHT TO A PUBLIC
TRIAL WHEN THE TRIAL COURT CLOSED THE COURTROOM FOR THE
ENTIRETY OF THE ALLEGED VICTIM'S TESTIMONY. SIXTH AND
FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I,
OHIO CONSTITUTION.

ASSIGNMENT OF ERROR TWO

THOMAS RECTOR WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE
EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO
OBJECT TO THE CLOSURE OF THE COURTROOM, NOTWITHSTANDING THE
FACT THAT SUCH A CLOSURE IS STRUCTURAL ERROR REQUIRING
REVERSAL WITHOUT REGARD TO PREJUDICE. SIXTH AND FOURTEENTH
AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO
CONSTITUTION.

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ORDERED THE
CLOSURE OF THE COURTROOM, FOR THE ENTIRETY OF THE ALLEGED
VICTIM'S TESTIMONY, IN VIOLATION OF MR. RECTOR'S RIGHT TO A
PUBLIC
TRIAL AND DUE PROCESS OF LAW. SIXTH AND FOURTEENTH
AMENDMENTS, U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO
CONSTITUTION.

On October 1, 2003, the state appellate court denied Rector's application to reopen, finding

his assignments of error to be without merit.  Rector timely moved for reconsideration, and

the court overruled his motion on October 22, 2003.  On February 9, 2005, Rector again

moved for reconsideration, and the state appellate court denied this application to

reconsider as untimely.

Rector timely filed in the Ohio Supreme Court a notice of appeal of the appellate

7

court's October 22, 2003 decision.  In his Memorandum in Support of Jurisdiction, Rector

raised one proposition of law:

PROPOSITION OF LAW I

WHEN AN APPELLATE ATTORNEY FAILS TO RAISE MERITORIOUS ISSUES IN
A CRIMINAL DEFENDANT'S DIRECT APPEAL OF A CONVICTION, THE
ATTORNEY RENDERS CONSTITUTIONALLY INADEQUATE ASSISTANCE.
SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10,
ARTICLE I, OHIO CONSTITUTION.

> A. A CRIMINAL DEFENDANT IS DENIED THE RIGHT TO A PUBLIC
> TRIAL WHEN THE TRIAL COURT CLOSES THE COURTROOM FOR THE
> ENTIRETY OF THE CHILD VICTIM'S TESTIMONY, IN VIOLATION OF A
> DEFENDANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW.
> SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION;
> SECTION 10, ARTICLE I, OHIO CONSTITUTION.

> B. TRIAL COUNSEL PROVIDES CONSTITUTIONALLY INEFFECTIVE
> ASSISTANCE WHEN COUNSEL FAILS TO OBJECT TO THE CLOSURE
> OF THE COURTROOM, NOTWITHSTANDING THE FACT THAT SUCH A
> CLOSURE IS STRUCTURAL ERROR REQUIRING REVERSAL WITHOUT
> REGARD TO PREJUDICE. SIXTH AND FOURTEENTH AMENDMENTS,
> U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.

> C. A TRIAL COURT COMMITS PLAIN ERROR WHEN IT ORDERS THE
> CLOSURE OF THE COURTROOM FOR THE ENTIRETY OF THE
> ALLEGED VICTIM'S TESTIMONY, IN VIOLATION OF A DEFENDANT'S
> RIGHT TO A PUBLIC TRIAL AND DUE PROCESS OF LAW. SIXTH AND
> FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; SECTION 10,
> ARTICLE I, OHIO CONSTITUTION.

The Ohio Supreme Court dismissed the appeal on January 21, 2004 as not involving a

substantial constitutional question.

On April 20, 2004, Rector filed a Petition for Writ of Certiorari in the United States

Supreme Court.  On June 28, 2004, the Court denied Rector's Petition.

On December 10, 2001, Rector filed in the trial court a Petition to Vacate pursuant

to Ohio Rev. Code § 2953.21.  Rector claimed that trial counsel provided ineffective

8

assistance by failing to call several witnesses whose testimony could have resulted in an acquittal.  On March 6, 2002 the trial court dismissed the Petition on the merits without holding an evidentiary hearing.

Rector timely appealed the trial court's dismissal of his motion to vacate.  Rector raised one assignment of error on appeal:

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN DISMISSING MR. RECTOR'S POSTCONVICTION PETITION WITHOUT AN EVIDENTIARY HEARING BECAUSE MR. RECTOR PROVIDED SUFFICIENT EVIDENCE THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

On June 19, 2003, the state appellate court reversed the trial court for failing to hold an evidentiary hearing and remanded the case for reconsideration after holding a hearing.

The trial court held an evidentiary hearing on December 16, 2003.  On August 30, 2004, the trial court denied Rector's Petition to Vacate.

Rector timely appealed the denial of his Petition to Vacate.  Rector raised one assignment of error on appeal:

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN DENYING MR. RECTOR'S POSTCONVICTION PETITION BECAUSE THE TOTALITY OF THE EVIDENCE PRESENTED AT TRIAL AND SUBSEQUENT TO THE TRIAL DEMONSTRATES THAT MR. RECTOR WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION SIXTEEN, ARTICLE I OF THE OHIO CONSTITUTION.

On December 22, 2005, the state appellate court affirmed the judgment of the trial court.

Rector filed a notice of appeal in the Ohio Supreme Court on February 3, 2006.  In his Memorandum in Support of Jurisdiction, Rector asserted one proposition of law:

9

<u>PROPOSITION OF LAW I</u>

IN ORDER TO PREVAIL ON A CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, A POSTCONVICTION PETITIONER NEED NOT DEMONSTRATE THAT THE EVIDENCE WHICH TRIAL COUNSEL FAILED TO PRESENT WOULD HAVE RENDERED THE STATE'S CASE INSUFFICIENT AS A MATTER OF LAW. RATHER, THE PETITIONER NEED ONLY DEMONSTRATE A REASONABLE PROBABILITY OF A DIFFERENT RESULT AT TRIAL, HAD THE EVIDENCE IN QUESTION BEEN PRESENTED. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION SIXTEEN, ARTICLE I OF THE OHIO CONSTITUTION.

On April 26, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Rector filed a Petition for a Federal Writ of Habeas Corpus on April 25, 2007. Rector's petition asserts seven grounds for relief:

**Ground one:** Petitioner's Ground One consists of three interrelated claims under the 6th and 14th Amendments. First, the trial court denied Mr. Rector's rights to a public trial and to due process when it closed the courtroom for the testimony of the State's key witness, and did so without making any findings to warrant closure or inquiring into less drastic alternatives. Second, trial counsel provided ineffective assistance in failing to object to the closure of the courtroom. Third, Mr. Rector's appellate counsel provided ineffective assistance in failing to assert as error on appeal the substantive public-trial/due-process claim and the ineffective-assistance-of-counsel claim arising from trial counsel's failure to challenge the closure.

**Ground two:** Mr. Rector's trial counsel provided ineffective assistance, in violation of the 6th and 14th Amendments, by failing to present available testimony that would have directly contradicted the State's case as to the timing, manner, and location of the alleged assaults, and that would have undermined the credibility of the State's witnesses. There is a reasonable probability that, had the jury been aware of this testimony, it would have acquitted Mr. Rector on at least two, if not all, of the counts.

**Ground three**: The trial court denied Mr. Rector's rights to confrontation and due process in violation of the 5th, 6th, and 14th Amendments when it: 1) permitted the State, over continuing objections, to adduce the bulk of its direct evidence by the prejudicial use of leading questions in the direct examination of B.V.; and 2) overruled his motion to strike B.V.'s testimony when she admitted that her testimony was the product of a third party's account of the events, rather than her actual recollection.

10

**Ground four**: The trial court violated Mr. Rector's rights under the 5th, 6th, and 14th Amendments when it denied his motion for a mistrial and overruled his objections to testimony and argument regarding Count One of the indictment, which had been dismissed.

**Ground five**: Repeated acts of prosecutorial misconduct- vouching for witnesses, shifting the burden of proof, denigrating defense witnesses, and appealing to juror passion- deprived Mr. Rector of due process and a fair trial under the 5th, 6th, and 14th Amendments.

**Ground six**: When the trial court made comments on the record in the presence of the jury to the sole defense witness expressing the court's disdain for the witness, it violated Mr. Rector's right to due process and a fair trial under the 6th and 14th Amendments.

**Ground seven**: The cumulative effect of the errors in Mr. Rector's trial deprived him of his right to due process and a fundamentally fair trial under the 14th Amendment.

Respondent filed an Answer on June 29, 2007.  (ECF DKT #6.)  Rector filed a Traverse on

August 1, 2007.  (ECF DKT # 8.)  Thus, the Petition is ready for decision.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a Writ of

Habeas Corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law

must be clearly established at the time of the petitioner's conviction.  *Carey v. Musladin*, 549

11

U.S. 70, 74 (2006).  A decision is "contrary to" clearly established law if it reaches "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  An unreasonable application of federal law must be more than incorrect or erroneous.  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  Overall, the federal habeas court's standard for evaluating the state court's decision is "highly deferential," with "the presumption that state courts know and follow the law" and the requirement that the decisions of the state court "be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam); *accord Holland v. Jackson*, 542 U.S. 649, 655 (2004); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

Under the Habeas Rules and the Magistrates Act, the Court must make a *de novo* determination of those aspects of the Magistrate Judge's Report and Recommendation ("R & R") to which the petitioner objects.  Rule 8(b) of the Rules Governing Section 2254 Cases (2005) ("Habeas Rules"); 28 U.S.C. § 636(b)(1) (2000).  *De novo* review requires the Court to consider the record before the Magistrate and to reach an independent judgment in light of the objections.  *See, e.g.*, *Hudson v. Gammon*, 46 F.3d 785 (8th Cir. 1995).  The Court may reject, modify (in whole or in part), or adopt the Magistrate's recommendations or may refer the matter back to the Magistrate with appropriate instructions.  Rule 8(b) of the Habeas Rules; 28 U.S.C. § 636(b)(1).

**LAW AND ANALYSIS**

I.      **Jurisdiction, Evidentiary Hearing, Exhaustion of State Remedies**

      A.      **This Court Has Jurisdiction Over Rector's Petition.**

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under
> the judgment and sentence of a State court of a State which contains two or more Federal
> judicial districts, the application may be filed in the district court for the district within
> which the State court was held which convicted and sentenced him and each of such
> district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).  Rector was convicted in the Court of Common Pleas in Carroll

County, and Rector filed his Writ of Habeas Corpus in the Northern District of Ohio.  This Court

has jurisdiction over Rector's Petition.

      B.      **An Evidentiary Hearing Is Not Necessary To Resolve Rector's Petition.**

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances

when the factual basis of a claim has not been adequately developed in state court proceedings.

28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of

Rector's claims involve legal issues which can be independently resolved without additional

factual inquiry.

      C.      **With No Remaining State Remedies, Rector's Claims Have Been Exhausted.**

A state prisoner must exhaust all available state remedies or have no remaining state

remedies available before seeking a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b)

and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989).  Exhaustion gives the state courts the first

opportunity to address and correct alleged violations of a prisoner's federal rights.  *Duncan v.

Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  To

provide the state with this opportunity, a petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *E.g.*, Anderson *v. Harless*, 459 U.S. 4, 6 (1982); *Picard*, 404 U.S. at 275; *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Rector has no remaining state remedies for his claims; therefore, his claims have been exhausted.

## II.     Procedurally Defaulted Grounds for Relief

A federal habeas petitioner procedurally defaults his or her constitutional claims if the state appellate court has not considered the merits of the claims because the petitioner (1) failed to raise them before the state court, or (2) is barred from raising them by a state procedural rule. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). A federal court generally "declines to review procedurally defaulted claims out of respect for state-court enforcement of state procedural rules." *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009). The Supreme Court has stated that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law . . . ." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

14

To establish cause, the petitioner must "present a substantial reason to excuse his procedural default." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  The petitioner must ordinarily "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To establish prejudice, the petitioner must show that the trial errors worked to his or her "actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Rust*, 17 F.3d at 161.  Moreover, the petitioner must convince the court that there is a "reasonable probability" that the trial outcome would have been different but for the error.  *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

> **A.     Ground One, Subclaims One and Two: Rector's Public Trial and Ineffective Assistance of Trial Counsel Subclaims Are Procedurally Defaulted. Ineffective Assistance of Appellate Counsel Has Not Been Sufficiently Established as Cause and Prejudice to Excuse the Procedural Default.**

This Court need not address the Magistrate Judge's findings of procedural default for the first two subclaims in Rector's first ground for relief (the substantive public-trial claim for closing the courtroom for the testimony of the victim and the associated ineffective assistance of trial counsel claim for failing to object) because Rector concedes that he has procedurally defaulted these claims.  (Objections, ECF DKT #12 at 3.)  However, Rector objects to the Magistrate Judge's failure to address his cause and prejudice argument (based on ineffective assistance of appellate counsel) to excuse the procedurally defaulted claims.  (*Id.*)

Ineffective assistance of appellate counsel can serve as cause to excuse the procedural default of other claims brought by the habeas petitioner.  *E.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004).  Like an independent claim of ineffective assistance of counsel, the petitioner must establish the two prongs of the *Strickland*

test.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance

prong under *Strickland*, the petitioner must show that the performance of counsel "fell below an

objective standard of reasonableness . . . under prevailing professional norms."  *Id.* at 688.  This

deficient performance must in turn prejudice the defense.  *Id.* at 687; *Edwards*, 529 U.S. at 451.

The petitioner satisfies *Strickland*'s prejudice prong by showing that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  *Strickland*, 466 U.S. at 694; *see also Hall v. Vasbinder*, 563 F.3d 222, 237 (6th

Cir. 2009).

Additionally, the ineffective assistance of appellate counsel claim must be presented to

the state courts and exhausted before it can be used to show cause for a default.  *Murray*, 477

U.S. at 488-89; *Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006).  Finally, establishing

ineffective assistance of counsel to excuse a procedural default does not require the petitioner to

meet the highly deferential AEDPA standard of review.  *Hall*, 563 F.3d at 236-37; *Joseph v.*

*Coyle*, 469 F.3d 441, 459 (6th Cir. 2006).  Instead, the court must determine whether the claimed

ineffective assistance of appellate counsel was a constitutional violation *de novo*.  *Joseph*, 469

F.3d at 459.

Here, Rector argues that the cause for procedurally defaulting the first two subclaims in

Ground One was the ineffective assistance of his appellate counsel in failing to assert these

claims as errors on appeal.  (Objections at 3.)  Rector fairly presented and exhausted his claim of

ineffective assistance of appellate counsel as an independent constitutional claim to both the

state appellate court and the Ohio Supreme Court.  *See Broom*, 441 F.3d at 401.  However,

16

Rector cannot satisfy the two prongs of the *Strickland* test for ineffective assistance of appellate

counsel, even under a *de novo* standard of review.  His procedurally defaulted subclaims,

therefore, are not excused.

      First, the performance of Rector's appellate counsel did not fall "below an objective

standard of reasonableness . . . under prevailing professional norms."  *See Strickland*, 466 U.S. at

688.  Rector argues that his substantive public-trial claim for closing the courtroom for BV's

testimony and the associated ineffective assistance of trial counsel claim for failing to object

were apparent on the face of the record.  (Objections at 4.)  He then argues that the partial

closure of a courtroom is so firmly established as a violation of the constitutional right to a

public trial that it constitutes black-letter law that no reasonable appellate counsel would have

failed to assert it as error.  (*Id.* at 4-5.)  This is simply not true.

      Rector relies on the four-part *Waller* test to show that the partial closure in his trial was a

clear violation of his constitutional rights.  *See Waller v. Georgia*, 467 U.S. 39, 48 (1984)

("[T]he party seeking to close the hearing must advance an overriding interest that is likely to be

prejudiced, the closure must be no broader than necessary to protect that interest, the trial court

must consider reasonable alternatives to closing the proceeding, and it must make findings

adequate to support the closure.").  While the Sixth Circuit does not appear to have ever

addressed the issue of partial closures in criminal trials, other circuits (as well as the Eastern

District of Michigan) have limited the application of the *Waller* test for partial closings by

determining for the first prong whether there was "a substantial reason" for the closure rather

than "an overriding interest."  *See United States v. Smith*, 426 F.3d 567, 571 (2nd Cir. 2005);

*United States v. Osborne*, 68 F.3d 94, 99 (5th Cir. 1995); *United States v. Farmer*, 32 F.3d 369,

371-72 (8th Cir. 1994); *United States v. Sherlock*, 962 F.2d 1349, 1356-57 (9th Cir. 1992) (as amended); *Nieto v. Sullivan*, 879 F.2d 743, 753 (10th Cir. 1989); *Douglas v. Wainwright*, 739 F.2d 531, 533 (11th Cir. 1984); *Bonner v. Vasbinder*, No. 04-10254, 2006 WL 3500866, at *4-5 (E.D. Mich. Dec. 4, 2006).  Even though the trial court in Rector's case failed to make findings or consider alternatives on the record as the *Waller* test prescribes, *Waller* only applies to closures *over the objections of counsel* and arguably only to complete closures.  *See Waller*, 467 U.S. at 46 ("In sum, we hold that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests . . . .").

The *Waller* test, as applied to partial closures and over no objections, certainly does not constitute black-letter law.  Reasonable appellate counsel would probably not assert a public-trial claim or associated ineffective assistance of trial counsel claim for a supposed *Waller* violation under these circumstances.  At best, these two procedurally defaulted subclaims are based on novel legal arguments that Rector's appellate counsel did not consider strategic to assert as errors.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding that appellate counsel is not required to raise every non-frivolous issue on appeal).  His appellate counsel could have reasonably believed that Rector had stronger claims to assert, especially since Rector had waived his Sixth Amendment right to a public trial by failing to object, and it is extremely difficult to succeed on an ineffective assistance of counsel claim.  *See Levine v. United States*, 362 U.S. 610, 618-19 (1960); *see also Strickland*, 466 U.S. at 689 (holding that scrutiny over counsel's performance must be "highly deferential" and that there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"); *Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("[T]he Constitution guarantees criminal defendants only a fair trial and a

18

competent attorney.  It does not insure that defense counsel will recognize and raise every

conceivable constitutional claim.").

Unfortunately, the record does not disclose Rector's trial counsel's strategy (or lack

thereof) for not objecting to the closing of the courtroom for BV's testimony.  However, the

appellate court did note that:

> [I]t appears the decision to clear the courtroom was discussed off the record at some
> point.  For all we know, the details of this discussion could entail acquiescence or
> encouragement by [Rector].  [Rector] could have been totally satisfied with the trial
> court's decision that bystanders, such as his wife and other family members, would not
> be able to hear first-hand what he did to his young step-daughter.

*State v. Rector*, No. 01 AP 758, 2003 WL 22331979, at *4 (Ohio Ct. App. Oct. 1, 2003) (internal

citations omitted).  The Magistrate Judge also reasoned that Rector's trial counsel may not have

objected because any "objection might well have been looked upon unfavorably by the jury as an

attempt to hold an alleged victim of tender years up to public scrutiny on a sensitive matter."  (R

& R, ECF DKT #9 at 22.)  Regardless of the particular strategy, "[s]trategic choices by counsel,

while not necessarily those a federal judge in hindsight might make, do not rise to the level of a

Sixth Amendment violation."  *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (citing

*McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000)).  Appellate counsel asserted arguably

stronger claims on direct appeal and Rector fails to present any compelling arguments to

demonstrate counsel's ineffectiveness.

Even if Rector could establish sufficient deficiency of his appellate counsel, he cannot

show that he was actually prejudiced by (1) the partial closure of the courtroom, (2) his trial

counsel's failure to object, or (3) his appellate counsel's failure to assert these claims on direct

appeal.  The prejudice analysis for the procedurally defaulted claims and for the independent

19

ineffective assistance of appellate counsel claim are "sufficiently similar to treat as the same." *Hall*, 563 F.3d at 237; *see also Joseph*, 469 F.3d at 462-63 ("Establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice.").

Rector does not sufficiently demonstrate a "reasonable probability" that the outcome of his trial would have been different but for the partial closing of the courtroom or the ineffectiveness of his trial counsel.  *See Strickland*, 466 U.S. at 694.  Nor does Rector "show a reasonable probability that his conviction would have been reversed if this argument had been raised on direct appeal."  *See Burton*, 391 F.3d at 779.  In denying Rector's application to reopen his direct appeal, the state appellate court found that Rector's appellate counsel's performance was not deficient or prejudicial to his defense.  *Rector*, 2003 WL 22331979, at *2-5.  Rector argues that the partial closure "would likely have caused the jury to view this witness in a different light than the other witnesses, enhancing her credibility in their eyes."  (Objections at 5.)  Even if Rector only had to show a *possibility* of a different outcome at trial, this argument is unavailing.  Rector falls far short of making the "showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *See United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  Rector was not prejudiced by the performance of his trial or appellate counsel because the partial closure of the courtroom does not undermine confidence in the jury's verdict.  *See Strickland*, 466 U.S. at 694.  As such, Rector cannot meet his burden to establish cause and prejudice from ineffective assistance of appellate counsel so as to excuse his procedurally defaulted claims of the right to a public trial and ineffective assistance of trial counsel for failing to object to the partial closure.

20

Rector alternatively argues that he does not have to establish prejudice because *Waller* recognizes that "the deprivation of the right to a public trial is structural error."  *Waller*, 467 U.S. at 49; (Objections at 12); *see also Hereford v. Warren*, 536 F.3d 523, 529 (6th Cir. 2008). Structural error affects "the entire conduct of the trial from beginning to end" and the "framework within which the trial proceeds, rather than simply an error in the trial process itself."  *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).  Rector's argument fails, however. First, because the Sixth Circuit has not addressed this precise issue, it is not clear whether partial closures, even if constituting structural errors, can relieve the petitioner from establishing prejudice.  The Eleventh Circuit recently reviewed a habeas petition where the petitioner's trial counsel failed to object to the partial closing of the courtroom for the testimony of the young victim in a child molestation case:

> Here the closure was not complete.  It was during the testimony of only a single witness, albeit the most important witness against the defendant, and at least two members of the public were allowed to remain in the courtroom.  If a partial closure of the courtroom like this is a structural error or defect- and we are assuming for this discussion that it is- the question is whether a habeas petitioner must show prejudice in order to prevail on a claim that his trial counsel was ineffective for failing to object to the closure.  The *Waller* decision does not answer this question because it came in a direct appeal presenting the pure closure issue, not in a collateral attack on the conviction presenting an ineffective assistance of counsel claim stemming from the failure to object to the closure.  It is one thing to recognize that structural errors and defects obviate any requirement that prejudice be shown on direct appeal and rule out an application of the harmless error rule in that context.  It is another matter entirely to say that they vitiate the prejudice requirement for an ineffective assistance claim.

*Purvis v. Crosby*, 451 F.3d 734, 740 (11th Cir. 2006).  Second, *Waller* (as an example of the denial of the right to a public trial as structural error) deals with full closures of proceedings over the objections of counsel.  *See Waller*, 467 U.S. at 46.  A partial closure, without objection, can hardly be said to similarly infect the entire trial process.  In other words, the partial closure was

21

not structural error.  Even if the *Waller* test applied and the trial court failed to meet this test, Rector waived his right to a public trial by not objecting.  Only if there was no waiver can the courtroom closure violate the Sixth Amendment.  *See Levine*, 362 U.S. at 618-19.  For these reasons, Rector's argument that the partial closing of his trial constituted structural error that is not subject to a prejudice analysis is rejected by this Court.

Rector's remaining objections that are not addressed above either completely misconstrue the Magistrate Judge's Report and Recommendation or simply repeat arguments on the merits of these defaulted claims.  In sum, even under a *de novo* standard of review, Rector has failed to establish ineffective assistance of appellate counsel to excuse his procedurally defaulted public trial and associated ineffective assistance of trial counsel subclaims.

> **B.**     **Ground Three: Rector Procedurally Defaulted His Third Ground for Relief Because He Did Not Fairly Present These Claims to the State Appellate Court as Involving a Federal Constitutional Question.**

Rector claims in his third ground for relief that his rights to confrontation and due process were denied when the trial judge (1) permitted the use of leading questions in the direct examination of BV over his counsel's objections and (2) overruled his motion to strike BV's testimony.  The Magistrate Judge determined that Rector procedurally defaulted his third ground for relief:

> Rector relied exclusively on state law in raising this claim in the state courts and did not frame the claim as a federal constitutional question. Having failed to raise the claim as a federal constitutional question in the state appellate court and in the Ohio Supreme Court, Rector failed fairly to present his claim to the highest state court in a federal constitutional context. He has, therefore, procedurally defaulted his third ground for relief.

(R & R at 14.)  Rector objects to the Magistrate Judge's recommendation and argues that these claims were fairly presented as federal constitutional claims.  (Objections at 31.)

22

Federal courts lack jurisdiction over any habeas ground for relief not fairly presented to the state courts. *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). The Sixth Circuit has identified four factors to consider in determining whether a habeas petitioner has fairly presented a federal constitutional issue to the state courts:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Id.* "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984)). Merely placing these general allegations in "brief headings and conclusions" does not constitute a fair presentation to the state court. *Blackmon*, 394 F.3d at 400-01. Ordinarily, a federal constitutional claim is not fairly presented to a state court if the court must "read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

In Rector's fourth and fifth assignments of error in his state court appellate brief, he only alleged general denials of his right to "due process" in the respective headings and general denials of his "rights to a fair trial, impartial jury, due process and equal protection of law" in the respective conclusions. (Return of Writ, ECF DKT #6, Ex. 7(f), Corrected Merit Brief of Thomas C. Rector at 61-64.) Rector did not cite any federal or state cases that employed the relevant constitutional analysis to even attempt to show how his constitutional rights were

23

violated.  (*Id.*)  In fact, Rector did not cite *any* cases in support of his fourth and fifth assignments of error, but rather only cited to *Ohio Jurisprudence* to support his arguments regarding leading questions.  (*Id.*)  The state court could not possibly find a federal constitutional claim even by reading beyond Rector's appellate brief.

Rector's arguments that he presented the substance of his federal claims to the state court and that he "alleged a pattern of facts within the mainstream of constitutional litigation" are unconvincing.  (Objections at 31.)  The Seventh District Court of Appeals was not fairly apprised of Rector's federal constitutional claims because "the only legal theory presented to the state [court] was predicated entirely upon state evidentiary law."  *See Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987).  Furthermore, the appellate court analyzed these assignments of error entirely under state law as a claimed abuse of the trial court's discretion. *Rector*, 2002 WL 32098116, at *4-6.  Finally, evidentiary rulings usually do not fall under the "mainstream of constitutional litigation."  *See Colon v. Johnson*, 19 F. Supp. 2d 112, 118 (S.D.N.Y. 1998) ("[G]enerally an evidentiary ruling is not a matter of federal constitutional law; an erroneous evidentiary ruling can, however, rise to the level of a constitutional claim . . . if it is shown that the error so infected the proceedings as to have denied the petitioner a trial affording due process of law by rendering it fundamentally unfair.").  The evidentiary rulings in question here cannot be said to be egregious enough (or even erroneous) such that this Court is warranted in concluding that Rector fairly presented these issues as federal constitutional claims to the state courts despite (1) only presenting general allegations in the headings and conclusions of his appellate brief, (2) not providing any constitutional analysis in his appellate brief or references to cases that do employ such an analysis, (3) presenting a legal theory predicated only on state

evidentiary law, and (4) the Ohio appellate court ruling on these assignments of error entirely under state law.

For these reasons, this Court adopts the Magistrate Judge's recommendation that Rector's third ground for relief is procedurally defaulted, and denies Rector's request to refer Ground Three back to the Magistrate for further findings.

> ### C. Ground Six: Rector Procedurally Defaulted His Sixth Ground for Relief Because He Did Not Object to the Trial Court's Alleged Errors and Ohio's Contemporaneous Objection Rule is An Adequate and Independent Ground to Foreclose Habeas Review.

Rector claims in his sixth ground for relief that the trial court violated his rights to due process and a fair trial when it expressed disdain for the sole defense witness before the jury. The Magistrate Judge determined that Rector procedurally defaulted this claim:

> Rector failed to object to the court's alleged error.  Under Ohio's contemporaneous objection rule, a petitioner waives an alleged error when he or she fails to make a contemporaneous objection at the time of the alleged error or errors.  The Supreme Court has held that Ohio's contemporaneous objection rule is an adequate and independent ground upon which Ohio may rely to foreclose habeas review.  *Engle v. Isaac*, 456 U.S. 107, 124-129 (1982).

(R & R at 14-15.)  Rector objects to the Magistrate's recommendation and argues that this claim is not procedurally barred because the Ohio Court of Appeals addressed his claim on the merits, not in terms of waiver.

The Sixth Circuit employs the four-part *Maupin* test to determine whether a petitioner's claim is procedurally defaulted.  *Scuba v. Brigano*, 527 F.3d 479, 485 (6th Cir. 2007).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "Second, the court must decide whether the state courts actually enforced the

state procedural sanction."  *Id.*  "Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim."  *Id.* (internal quotations omitted).  If these first three criteria are met, the petitioner's claim is barred by procedural default unless the petitioner can demonstrate cause and prejudice.  *Id.*

Here, the first *Maupin* criterion has been satisfied as Rector failed to object to the alleged errors of the trial court.  (Return, ECF DKT #6, Ex. 7(e), Corrected Merit Brief of Thomas C. Rector at 40.)  Under Ohio's long-standing contemporaneous objection rule, failure to lodge an objection during the trial constitutes a waiver of any later review of the issue on appeal, absent plain error.  *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004) (citing *State v. Smith*, 89 Ohio St.3d 323, 332 (2000)).  Next, the second *Maupin* criterion has been satisfied as the Seventh District Court of Appeals recognized Rector's failure to object and reviewed this claim only for plain error.  *Rector*, 2002 WL 32098116, at *13-14.  The Sixth Circuit has held that "the application of plain error review constitutes enforcement of [Ohio's contemporaneous objection] rule."  *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005).  Finally, the third *Maupin* criterion has been satisfied as the Sixth Circuit has held that "Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal habeas review . . . ."  *Id.* Since this claim is procedurally defaulted and Rector does not argue cause and prejudice as excuse, this Court is barred from reviewing the claim on its merits.

Rector objects to the Magistrate Judge's failure to address the authorities cited in his Traverse: *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir. 2003); *Clinkscale v. Carter*, 375 F.3d 430, 441-42 (6th Cir. 2004); and *Patterson v. Haskins*, 316 F.3d 596, 605 (6th Cir. 2003).

(Objections at 36.)  But Rector's application of these authorities to this issue is preposterous. While it is true that the state court must have "clearly and expressly" stated that its judgment rested on a state procedural bar, *Harris v. Reed*, 489 U.S. 255, 263 (1989), Rector's cited authorities do not stand for the proposition that plain error analysis (1) ignores the state procedural bar, (2) rules on the merits of the claim, and (3) does not preclude federal habeas review.

Because Rector's appellate decision rests on an adequate and independent state procedural ground and he does not argue cause and prejudice as an excuse, Rector's claim in his sixth ground for relief is procedurally defaulted and barred from federal habeas review.  For these reasons, this Court adopts the Magistrate Judge's recommendation for Ground Six and denies Rector's request to refer Ground Six back to the Magistrate Judge for further findings.

## III.  Merits of Additional Grounds For Relief

### A.  Ground One, Subclaim Three: Rector's Ineffective Assistance of Appellate Counsel Claim Fails Under AEDPA Scrutiny Because Rector Cannot Establish It Under a *De Novo* Standard of Review.

The Magistrate Judge addressed Rector's third subclaim in Ground One - ineffective assistance of appellate counsel for failing to assert the public trial claim and ineffective assistance of trial counsel claim - on the merits, applying the deferential AEDPA standard.  The state appellate court found that Rector did not satisfy the two-prong *Strickland* test for ineffective assistance of appellate counsel.  (R & R at 21.)  The claim turned on *Waller* and its application to unobjected partial closures.  The Magistrate Judge found that the state appellate

court's decision was not "contrary to" or an "unreasonable application" of *Waller*, and Rector objects to this determination. (*Id.* at 22; Objections at 16-20.)

Rector's claim for ineffective assistance of appellate counsel clearly fails under the AEDPA standard of review. As discussed above (in conjunction with the procedurally defaulted subclaims in Ground One), Rector's *Waller* argument is unconvincing because its application to his claims is not, as he argues, black-letter law that no reasonable attorney would fail to assert. The facts of *Waller* and Rector's case are so materially distinguishable that the state appellate court's decision cannot be "contrary to" or an "unreasonable application" of *Waller*. Moreover, since Rector's claim for ineffective assistance of appellate counsel fails as sufficient cause and prejudice to excuse the procedurally defaulted subclaims in Ground One under a *de novo* review, the "independent claim necessarily fails under the stricter AEDPA standard of review." *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009) (citing *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006)).

Rector also argues that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence on the record. (Objections at 21.) The appellate court noted:

> [I]t appears the decision to clear the courtroom was discussed off the record at some point. For all we know, the details of this discussion could entail acquiescence or encouragement by [Rector]. [Rector] could have been totally satisfied with the trial court's decision that bystanders, such as his wife and other family members, would not be able to hear first-hand what he did to his young step-daughter.

*Rector*, 2003 WL 22331979, at *4 (internal citations omitted). While the record on this point is extremely limited and the above-stated reasons why Rector did not object are speculative, the state appellate court did not *base* its rejection of Rector's claim of ineffective assistance of

28

counsel on this "note" at the end of their analysis.  *Id.*  The court rejected the claim because Rector did not even allege actual prejudice, but rather argued that he did not have to show prejudice because the closing of the courtroom was structural error.  *Id.*

Since Rector cannot establish ineffective assistance of appellate counsel under a *de novo* standard of review, his independent claim under the higher AEDPA standard necessarily fails.

**B.      Ground Two: Rector Cannot Demonstrate that the State Appellate Court Unreasonably Applied *Strickland* to His Claim That His Trial Counsel Was Ineffective For Not Presenting Available Testimony.**

In his second ground for relief, Rector argues that his trial counsel was ineffective for failing to present available testimony that would have directly contradicted the State's case and that would have undermined the credibility of the State's witnesses.  The Magistrate Judge determined that Rector's trial counsel was not deficient; and that Rector failed to show that the state appellate court unreasonably applied *Strickland* to his case.  (R & R at 31.)  Rector objects to the findings of the state appellate court in affirming the denial of his Petition to Vacate as well as the findings and reasoning of the Magistrate's recommendation.

To establish ineffective assistance of counsel, the petitioner must satisfy the two prongs of the *Strickland* test: (1) deficient performance below an objective standard of reasonableness and (2) prejudice such that there is a reasonable probability that the trial result would have been different.  *Strickland*, 466 U.S. at 687, 694.  While "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.* at 690-91. "[J]udicial scrutiny of counsel's performance must be highly deferential" and the petitioner must overcome the presumption that

his or her counsel's actions "might be considered sound trial strategy." *Id.* at 689. Finally, it is not enough to convince the federal habeas court that the *Strickland* prongs have been established; the petitioner must satisfy the AEDPA standard of review:

> For [the petitioner] to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under Section 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (internal citations omitted); *see also Awkal v. Mitchell*, 559 F.3d 456, 463 (6th Cir. 2009).

> 1. Rector's Trial Counsel Was Not Ineffective For Not Calling Witnesses That Could Only Provide a Partial Alibi.

Here, Rector argues that his trial counsel was ineffective for failing to call Carrie Rector (BV's mother), Atlee Rosenberger II (BV's maternal grandfather), and Delbert Rector (Thomas Rector's father) to testify on his behalf. (Petition, ECF DKT #1 at 16.) He argues that the post-conviction testimony of these people completely rebutted Counts Three and Four against him and would have created a reasonable doubt over whether he committed these two rapes at the times alleged by the State. (Traverse, ECF DKT #8 at 11.) All counts in Rector's indictment alleged that he committed the rapes in the child's bedroom at Thomas and Carrie Rector's residence; Counts Three and Four alleged that the conduct occurred on or about November 20, 1999 to November 27, 1999 and on or about December 24, 1999. (R & R at 26.) The post-conviction testimony eliminated Thanksgiving Day, Christmas Eve, and Christmas Day as

possible dates when the rapes occurred since BV did not stay overnight with the Rectors on these days.  (*Id.* at 29.)

Still, because the indictment alleged that these two counts of rape occurred on *or about* the Thanksgiving and Christmas holidays, this testimony would only have provided Rector with a partial alibi.  As the trial and appellate court reasoned, "it would have been a very questionable trial strategy to present an alibi defense without evidence to sustain the full alibi, as the incomplete defense would only have focused attention on the time periods not covered by the alibi."  *State v. Rector*, No. 04 CA 810, 2005 WL 3537687, at *8 (Ohio Ct. App. Dec. 21, 2005). Furthermore, the appellate court recognized certain credibility issues with these witnesses, including bias and vagueness, based on the trial court's determination that this testimony did not undermine the verdict against Rector.  *Id.* at *9.

Rector objects to the appellate court's credibility evaluation and argues that it constitutes an unreasonable determination of the facts in light of the evidence.  (Objections at 26.)  While the appellate court's characterization of these witnesses' credibility may have been overly harsh based on the record, it was not unreasonable, let alone determinative of its decision.  The appellate court explicitly stated that it did not attempt to weigh the credibility of these witnesses, but only noted these issues as additional reasons to understand the trial court's judgment. *Rector*, 2005 WL 3537687, at *9.  The determinative factor appears to be that the alibis did not cover the entire period of time.  *See id.* at *8.

Rector specifically objects to the Magistrate Judge's determination that Atlee Rosenberger II "never testified that, indeed, he stayed with the Rectors during the Wednesday through Sunday of Thanksgiving week 1999."  (Objections at 29-30; R & R at 30.)  Rector

31

attempted to show that Rosenberger was at his house over the long Thanksgiving weekend, and that BV did not spend the night there on those nights when Rosenberger was there.  Even if the Magistrate's statements were a mischaracterization of Rosenberger's testimony, they reflect the problems that the state courts and the Magistrate Judge had with the testimony.  Addressing the same testimony, the appellate court stated that Rosenberger "did not testify directly as to whether the victim actually was or was not at [Rector's] home during those holidays, but only that he could not remember a time when both he and the child stayed overnight at [Rector's] home at the same time."  *Rector*, 2005 WL 3537687, at *7.  Ultimately, Rosenberger's testimony was vague and his memory of these events was admittedly faulty.  *Id.* at *9.  Rosenberger was not specific enough; his equivocal testimony did not convince the state courts that Rector's trial counsel was ineffective for not calling Rosenberger to testify.  Based on the record, this was not an unreasonable determination.

Rector has not overcome the presumption that his trial counsel's strategy was sound, as it is reasonable not to call partial alibi witnesses.  Since Rector was tried more than a year after the rapes occurred, his trial counsel "would have been faced with the daunting task of assembling alibis for eight or more days in November and for some indefinite number of days during the Christmas holidays."  (R & R at 27.)  Also, Rector's trial counsel had surely considered a possible alibi defense for these counts of rape since one had been prepared for the count that was eventually dismissed.  (*See* Traverse at 26.)  Furthermore, Rector has not demonstrated that there is a reasonable probability that his trial outcome would have been different had these witnesses provided their partial alibis.  Thus, Rector has not established the two prongs of *Strickland* - let

alone demonstrated that the state appellate court's decision was based on an unreasonable

application of *Strickland* or an unreasonable determination of the facts.

> ### 2. Rector Has Not Sufficiently Demonstrated That His Trial Counsel Was Ineffective For Failing to Fully Investigate and Interview Witnesses.

Rector also argues that if his trial counsel had interviewed Atlee Rosenberger III

(Carrie's brother) at all and Carol Zorger (BV's maternal grandmother) more fully, they would

have been called to testify at trial and would have established a motive for Paul Vogley (BV's

father) to fabricate the rape charges and manipulate BV into lying. (Traverse at 12.)

Rosenberger III, who was once friends with Vogley, testified at the postconviction hearing that

Vogley had twice told him that "he wished there was a way he could make it so [Carol] and

[Carrie] wouldn't get to see [BV] anymore." *Rector*, 2005 WL 3537687, at *6. Zorger testified

that Vogley admitted to fabricating stories about another family member abusing BV. *Id.*

Rector further argues that "[i]t was counsel's duty to conduct a sufficient investigation in light of

the circumstances. The state court never made that inquiry, so its application of *Strickland* is

unreasonable." (Objections at 27.) Rector's arguments, however, must fail.

First, like the other postconviction witnesses, the state courts found credibility issues

with Rosenberger III and Zorger. The state appellate court stated that Rosenberger III appeared

to show bias and antagonism toward Vogley. *Rector*, 2005 WL 3537687, at *9. Even if Rector

is correct in asserting that Rosenberger III did not really show bias and antagonism, the appellate

court's disposal of his testimony was still reasonable: "His theory that Paul Vogley somehow

fabricated the rape charges to prevent Carrie from exercising visitation is illogical, given that

33

Carrie had unlimited visitation rights and that Paul Vogley never attempted to interfere with visitation." *Id.*

The appellate court conceded that there may be a reasonable probability that had Zorger testified at Rector's trial, the result would have been different, thus possibly satisfying *Strickland*'s second prong. *Id.* However, Rector could not demonstrate that his trial counsel's performance was deficient because Zorger had met with his counsel before trial and she did not testify that she had disclosed her conversation with Vogley. *Id.* at *10. The appellate court reasoned that Rector's trial counsel would have had to somehow anticipate this allegation or randomly ask Zorger if she knew of Vogley fabricating such stories. *Id.*

Second, the appellate court stated that Rector's "argument is more akin to an alleged failure of counsel to fully investigate the facts rather than an argument of faulty trial tactics." *Id.* If Rector had argued that his counsel had failed to fully interview Zorger to the state courts, he may have been able to establish deficient performance. For example, the Sixth Circuit has explicitly stated that counsel's "duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence," *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005), and that "the failure to interview key defense witnesses is objectively unreasonable in light of *Strickland*." *Poindexter v. Booker*, 301 Fed. Appx. 522, 528 (6th Cir. 2008). However, Rector made only a brief mention of this argument in his post-hearing brief to the common pleas court:

> No stone should have been left unturned in a search for evidence to support Mr. Rector's innocence, and once found, this evidence should have been presented for the jury's consideration. The failure to make an investigation into evidence that could exonerate a client is not a strategic choice.

34

(Return, Ex. 37, Defendant-Petitioner Thomas C. Rector's Post-Hearing Brief at 15.)  This was

the extent of Rector's analysis into his trial counsel's failure to fully investigate defense

witnesses.  Furthermore, Rector did not even raise this argument on appeal.  (*See* Return, Ex. 44,

Appellant Thomas Rector's Merit Brief.)  The defendant must demonstrate counsel's failure to

the court; a "court will not infer a failure to investigate a defense by counsel from a silent

record." *Rector*, 2005 WL 3537687, at *10 (internal citations and quotations omitted).  Thus,

Rector's argument that the appellate court's failure to inquire into his trial counsel's

investigation was an unreasonable application of *Strickland* is entirely without merit.

In sum, Rector has not sufficiently demonstrated the two prongs of the *Strickland* test for

his trial counsel's failure to present the testimony of these five witnesses for either his partial

alibi defense or fabrication defense.  As the appellate court stated:

> It is clear from the record that counsel did have a trial strategy, did attempt to discredit
> the victim at trial, and concentrated on the lack of physical evidence to overcome the
> victim's testimony.  The fact that another attorney may have used a different strategy is
> not sufficient to establish ineffective assistance of counsel.

*Id.*  Rector's claim cannot independently satisfy *Strickland*, so it necessarily fails under the

higher AEDPA standards.  For these reasons, this Court adopts the recommendation of the

Magistrate Judge to overrule Rector's second ground for relief.

C.    **Ground Four: Rector Cannot Establish That the State Appellate Court's
      Decisions Regarding His Objections to Testimony Related to the Nolled
      Count and His Denied Motion for a Mistrial Were Based on an Unreasonable
      Application of Federal Law or an Unreasonable Determination of the Facts.**

In his fourth ground for relief, Rector claims that the trial court violated his  rights under

the Fifth, Sixth, and Fourteenth Amendments when it denied his motion for a mistrial, and

35

overruled his objections to testimony and argument regarding Count One of the indictment, which had been dismissed.  The Magistrate Judge recommended that Ground Four be overruled as the trial court's rulings did not involve an unreasonable application of federal law and were not based on an unreasonable determination of the facts.  As to Ground Four, Rector objects to the R & R in its entirety.

A trial court's abuse of discretion is not, by itself, a ground for federal habeas relief. *Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) ("We can conceive of no situation in which a federal judicial determination on *habeas* collateral review that a state court, as a matter of general law, abused its discretion in denying the withdrawal motion is *therefore* a violation of the federal Constitution."); *see also Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983).  Likewise, "federal habeas relief does not lie for error of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  Furthermore, errors in evidentiary rulings generally do not support the grant of habeas relief unless the "ruling is so egregious that it results in a denial of fundamental fairness," and thus, due process.  *E.g.*, *Fleming v. Metrish*, 556 F.3d 520, 534 (6th Cir. 2009); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Walker*, 703 F.2d at 962.  A court may not grant habeas relief unless the trial error had a substantial and injurious effect on the jury's verdict.  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

Here, the state appellate court reviewed the trial court's decision to deny the motion for mistrial for abuse of discretion.  *Rector*, 2002 WL 32098116, at *8.  At trial, the nolled count of

the indictment was referenced during the prosecutor's opening statements and direct examination of BV.  *Id.*  The reference during opening statements was not prejudicial because the prosecutor simply "informed the jury that Rector was charged with five counts of rape which occurred on five separate occasions."  *Id.*  At this point, the trial court had not yet ruled on the State's motion to amend Rector's indictment.  "After the court denied the motion to amend the indictment and the State nolled the first count, the court informed the jury that the State voluntarily dismissed count one of the indictment."  *Id.*  The state appellate court determined that Rector was not prejudiced by the opening statements:

> As Rector did not object to the court's delay in ruling on the motion to amend the indictment or the prosecutor's remarks during opening statements, we must examine these for plain error . . . We cannot see how there is even a reasonable probability that but for these statements the outcome of the trial would have been different.  Indeed, we find it likely that when the trial court informed the jury that the State had voluntarily dismissed the first count . . . Rector's case was strengthened . . . as it demonstrated the State could not prove a portion of the case it had originally brought to trial.  Furthermore, any possible taint arising from the suggestion of a fifth bad act would have been overcome by the identical nature of the other four bad acts which were properly before the jury.

*Id.*

During the direct examination of BV, the prosecutor began establishing facts related to the nolled count in a similar fashion to the four previously established counts.  Over the objection of defense counsel, the prosecutor established the approximate date of the incident, that the child was in her room, and that Rector entered the room before the trial judge eventually realized that the prosecutor was dealing with the nolled count.  *Id.*  The appellate court also determined that Rector was not prejudiced by this testimony either:

> Any indication in the manner the prosecutor was establishing facts that Rector had committed a fifth rape would have been overcome by the evidence that Rector had

committed four other rapes.  In addition, there were legitimate reasons for the prosecutor to engage in that line of questioning.  For instance, having the child establish when she was last over at Rector's home bolsters [her father's] testimony that the child told him about the rapes after she had been at Rector's home for a weekend.  Furthermore, the trial court gave a curative instruction.  "A jury is presumed to follow the instructions given to it by the trial judge."  Thus, any possible prejudice to the defendant is relieved by the trial court's curative instruction.

*Id.* at *9 (internal citations omitted).  The appellate court also rejected Rector's argument that the trial court's curative instruction was deficient so all of "his arguments relating to the nolled count of the indictment [were found to be] meritless."  *Id.*

Rector first argues that the appellate court did not decide this claim on the merits, so its decision is not subject to AEDPA deference.  (Objections at 33.)  Rector bases his argument on the court's statement that it "will not delve into correctness or appropriateness of the prosecution's, the trial court's, and Rector's counsel's actions because even if those actions were improper, Rector was not prejudiced by them."  *Rector*, 2002 WL 32098116, at *8.  Under Ohio law, however, mistrials should only be declared when the ends of justice so require and a fair trial is no longer possible.  *State v. Franklin*, 62 Ohio St.3d 118 (1991).  "An appellate court will not disturb the exercise of [the trial court's] discretion absent a showing that the accused has suffered material prejudice."  *State v. Sage*, 31 Ohio St.3d 173, 182 (1987).  The state appellate court, therefore, did properly decide on the merits that the trial court's rulings did not deprive Rector of a fundamentally fair trial before an impartial jury.  Rector does not expound his novel argument beyond conclusive statements and he provides no relevant supporting case law.  Rector has not demonstrated why this Court should not apply the AEDPA standard of review to his claims in Ground Four.

  1. <u>The State Appellate Court's Decision Was Not Based on an Unreasonable</u>
    <u>Determination of the Facts.</u>

  Rector argues that the state appellate court's decision was based on an unreasonable

determination of the facts because of three alleged errors.  First, the state appellate court found

that when the prosecution made its opening statement the trial court had not yet ruled on the

motion to amend the indictment.  *Rector*, 2002 WL 32098116, at *8.  According to Rector, the

court had already allowed the State to amend the indictment without allowing him to respond.

(Traverse at 25-26.)  Rector then filed a motion opposing the amendment, but the court refused

to make a final ruling before the trial started.  (*Id.*)  Second, the state appellate court applied a

plain error standard because it found that Rector had not objected to the court's delay in ruling

on the motion to amend until after trial started.  (*Id.* at 26.)  Rector argues that his counsel's

actions were sufficient to constitute an objection to the delay and the appellate court should have

applied a less rigorous standard.  (*Id.*)  Third, the court found that the prosecutor's opening

statement "informed the jury that Rector was charged with five counts of rape which occurred on

five separate occasions."  *Rector*, 2002 WL 32098116, at *8.  Rector argues that this "statement

is only half true."  (Traverse at 27.)  According to Rector, the prosecutor gave a "graphic

description of the allegations in Count One" during opening statements:

> [BV's] going to tell you that on five, at least five separate occasions, Thomas Rector
> came into her bedroom while she was at her mother's for visitation. . . . Now on five
> separate occasions the defendant came into her bedroom, pulled down her pants, inserted
> his finger into her vagina and licked her vagina.

(*Id.*; Return, Ex. Trial Tr. at 64: 11-16.)

  Despite Rector's contention, these three alleged errors are actually more than reasonable

determinations of the facts; they are completely accurate.  First, a statement that the court had

not yet ruled on a pending motion because the previous ruling had been withdrawn is technically correct.  (R & R at 36.)  Second, the appellate court was entirely correct that Rector did not object to the court's decision to wait until after the trial started to rule on the motion to amend.  *Id.*  A request for a pretrial ruling is not  "sufficient to constitute an objection to the delay."  (Traverse at 26.)  Finally, the appellate court accurately described the prosecutor's opening statement.

    2. <u>The State Appellate Court's Decision Was Not An Unreasonable Application of Federal Law.</u>

  Rector claims that the state appellate court's analysis of prejudice potentially resulting from the jury's exposure to the dismissed count of rape during the State's direct examination of BV "is flawed and represents an unreasonable application of federal law."  (Traverse at 27.)  According to Rector, the appellate court's analysis finding that any questioning approaching the subject of the dismissed count was overcome by evidence that Rector had committed the first four rapes is flawed because belief in the occurrence of the other four rapes rests on BV's credibility.  (*Id.*)  "Testimony about a September rape (Count One) a few days before BV's report to her father would have enhanced the child's credibility" and "the chances of a conviction on the four remaining counts."  (*Id.* at 27-28.)  Even if this Court did believe that this testimony had some kind of prejudicial impact on Rector's defense, Rector does not demonstrate how the appellate court's analysis represents an unreasonable application of federal law.  The appellate court's decision rested on state-law questions of evidentiary rulings and abuse of the trial court's discretion, which are generally not the province of a federal habeas court to reexamine.  *Estelle*, 502 U.S. at 68.  Rector cites no holding of the Supreme Court, let alone any

case, to show that on these facts Rector was deprived of any right guaranteed by the Constitution.  This argument, therefore, fails under AEDPA review.

Rector's objection that the Magistrate Judge applied a "clear and convincing evidence" standard to the previous argument is without merit.  The R & R stated that "Rector's suppositions about what effect exposure to the direct examination might have had on the jury fall very far short of the clear and convincing evidence needed to show that the court erred in determining what effect the questioning had on the jury."  (R & R at 38.)  The Magistrate Judge was not applying a clear and convincing evidence standard to Rector's fourth ground for relief; the judge was stating that Rector did not present clear and convincing evidence to the state appellate court to show that the trial court erred in its determination.  The Magistrate Judge based the recommendation on Rector's failure to cite any holding of the Supreme Court to demonstrate that the appellate decision involved an unreasonable application of federal law.  *Id.*

Rector asserts that the state appellate court unreasonably applied federal law to the facts of his case because the court inadequately scrutinized the facts.  (Traverse at 28.)  On the contrary, the appellate court scrutinized the facts and found  BV's direct testimony established when BV was last at Rector's home, as well as the approximate date of the incident, that the child was in her room, and that Rector entered the room.  *Rector*, 2002 WL 32098116, at *8. Additionally, Rector disregards the trial court's curative instruction to the jury to ignore any testimony that addressed any alleged sexual conduct near the time of the dismissed count.  (R & R 39.)  Rector cites no Supreme Court holding that such an instruction is inadequate to remove any taint created by the prosecution's preliminary approach to the dismissed count of rape.  *Id.* He cites *Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003), for the proposition that the failure to

adequately scrutinize the facts constitutes an unreasonable application of federal law.  (Traverse at 28.)  *Wiggins* did not hold this.  In *Wiggins*, the Court stated that the assumption of an appellate court that an attorney's investigation was reasonable without an assessment whether the decision to cease the investigation constituted reasonable professional judgment was an unreasonable application of *Strickland*.  *Wiggins*, 539 U.S. at 527-28.  Accordingly, Rector would have to show that the state appellate court did not reasonably assess some aspect or element of a specific Supreme Court holding.  Since Rector failed to show that the state appellate court's decision was contrary to, or an unreasonable application of clearly established federal law, Rector's fourth ground for relief must be overruled.

>    **D.**    **Ground Five: Applying the Proper Two-Part Test to Rector's Claims of Prosecutorial Misconduct, the Prosecutor's Vouching Was Improper, But It Was Not Flagrant Enough to Warrant Relief.**

In his fifth ground for relief, Rector claims that repeated acts of prosecutorial misconduct - vouching for witnesses, shifting the burden of proof, denigrating defense witnesses, and appealing to juror passion - deprived him of due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments.  The Magistrate Judge recommended overruling Ground Five because Rector did not show that the state court erred in finding that the prosecutor's remarks did not constitute prejudicial misconduct.  Rector objects to the R & R's findings, conclusions, analysis, and recommendations regarding Ground Five in their entirety.  (Objections at 34.)  The R & R must be modified as both parties and the Magistrate Judge did not apply the Sixth Circuit's two-part test for claims of prosecutorial misconduct.

The Magistrate Judge dismissed Rector's claim because he did not demonstrate how the state appellate court erred in determining that the prosecutor's remarks did not render his trial fundamentally unfair; a typical AEDPA analysis.  To be sure, Rector's arguments relating to this claim are not very well developed as he fails to cite cases which specifically demonstrate the impropriety or possible prejudicial effect of the prosecutor's remarks.  Rector does have "the burden of establishing his right to federal habeas relief," *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009), and this burden should not be diminished for claims of prosecutorial misconduct. *See Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (A petitioner's burden of showing a denial of due process because of prosecutorial misconduct "is quite a substantial one" on habeas review.).

However, the analysis does not end here.  On habeas review, "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This question must be answered considering the totality of the circumstances of each case.  *See Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006); *Byrd*, 209 F.3d at 529-30.  Additionally, the court must adhere to the harmless error standard in reviewing the state court's determination regarding prosecutorial misconduct.  *E.g., Condon v.* Wolfe, 310 Fed. Appx. 807 (6th Cir. 2009)*; Broom v. Mitchell*, 441 F.3d 392, 412-13 (6th Cir. 2006).  An error is found to be harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Like *Brecht*'s "more state-deferential harmless-error standard," *McCary v. Lewis*, 255 Fed. Appx. 78, 79 (6th Cir. 2007) (per curiam), AEDPA requires deference to state

court determinations of prosecutorial misconduct claims.  *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002) ("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights.  But this case is before us on a petition for a writ of habeas corpus.  So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law."). The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

The Sixth Circuit employs a two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render the petitioner's trial fundamentally unfair:

> First, this court determines whether the prosecution's conduct or remarks were improper. If the answer is affirmative, then the court considers four factors to decide whether the improper acts were sufficiently flagrant to warrant reversal: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.

*Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006); *accord Irick v. Bell*, 565 F.3d 315 (6th Cir. 2009); *see also Condon*, 310 Fed. Appx. 807; *Johnson v. Bell*, 525 F.3d 466 (6th Cir. 2008) (employing the two-part test for determining whether prosecutorial misconduct meets the *Darden* and *Donnelly* standard).

1.  The Prosecutor's Vouching for BV's Credibility During Opening Statements Was Improper But Not Flagrant.

"It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying."  *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005) (citing *United States v. Young*, 470 U.S. 1, 17-19 (1985); *Berger v. United States*, 295 U.S. 78, 86-88 (1935)); *see also Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005) ("To be certain, prosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcibly assert reasonable inferences from the evidence.  But, they cannot put forth their opinions as to credibility of a witness, guilt of a defendant, or appropriateness of capital punishment.").  Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury."  *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).  The Supreme Court has explained the "two dangers" posed by vouching:

> [S]uch comments can convey the impression that evidence not presented to the jury but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985).

The Ohio appellate court applied a similar and proper standard of prosecutorial misconduct in Rector's direct appeal:

> The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial.  *State v. Fears* (1999), 86 Ohio St.3d 329, 332, 715 N.E.2d 136. In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected

45

substantial rights of the appellant.  *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15, 14
OBR 317, 470 N.E.2d 883.  "The touchstone of analysis 'is the fairness of the trial, not
the culpability of the prosecutor."  *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221,
767 N.E.2d 678, ¶ 61, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940,
71 L.Ed.2d 78.  An appellate court should not deem a trial unfair if, in the context of the
entire trial, it appears clear beyond a reasonable doubt that the jury would have found the
defendant guilty even without the improper comments.  *State v. LaMar*, 95 Ohio St.3d
181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121.  A failure to object to alleged prosecutorial
misconduct waives all but plain error. *Hanna* at ¶ 77; *LaMar* at ¶ 126.

"It is improper for an attorney to express his or her personal belief or opinion as to the
credibility of a witness or as to the guilt of the accused."  *State v. Williams* (1997), 79
Ohio St.3d 1, 12, 679 N.E.2d 646.  In order for the prosecutor to "vouch" for the witness,
the prosecutor's statements must imply knowledge outside the record or place the
prosecutor's personal credibility in issue.  *State v. Keene* (1998), 81 Ohio St.3d 646, 666,
693 N.E.2d 246.  Therefore, a prosecutor may argue that certain evidence tends to make a
witness more or less credible, but may not state his own belief as to whether a witness is
telling the truth.  *State v. Carpenter* (1996), 116 Ohio App.3d 615, 624, 688 N.E.2d 1090.

*Rector*, 2002 WL 32098116 at *3, 9.

Rector claims that the following statements made by the prosecutor during opening

arguments constitute improper vouching:

- [BV's] not going to tell you every time she's been around the defendant
  something horrible has happened to her.  She makes the connection.  She's going
  to tell you folks the truth.  (Return, Ex. Trial Tr. at 64: 19-20, 65: 1.)

- [BV's] going to come into this very big courtroom, sit on that witness stand, in
  front of Judge Martin, in front of all these attorneys, in front of you folks, the
  jurors, and most importantly in front of her stepfather Thomas Rector, and she's
  going to tell you what he did to her.  She's going to be able to do that because
  she's a very brave little girl and she knows she's telling the truth.  (*Id.* at 66: 10-
  15.)

- Now this isn't a case with a lot of physical evidence.  It's not a case about DNA
  or gene profiling or gloves that fit or don't fit.  We don't have a lot of fancy charts
  to help you folks do your duty as jurors here today.  We're not having any
  wonderful demonstrations to help you with that either.  Yours is going to be a
  tough job in this case, but what you do have, and what you will hear, is something

46

much more important and much more credible than any of those things, and that's [BV].  (*Id.* at 66: 4-10.)

Rector also complains of a statement made during closing argument: "[The victim's father] has custody of the child, so there is no reason why she would be making these things up." (*Id.* at 276: 14-15.)  Rector did not object to any of these statements at trial, although it is not entirely clear whether the appellate court decided the claim under plain error.  For example, the court stated that it did not matter whether they find that the opening argument statements "were or were not improper because they did not render Rector's trial unfair."  *Rector*, 2002 WL 32098116, at *10.  Because the state appellate court appears to have ruled on the merits of this claim using the correct substantive legal standards (or, because the State has waived any procedural default argument), the only determination left for this Court is whether the state court reasonably applied clearly established federal law.  This is determined by the two-part "improper and flagrant" test.

First, the remarks by the prosecutor in opening statements are almost certainly improper vouching.  It was "patently improper" for the prosecution to comment on BV's credibility during opening arguments when it stated twice that she would tell the truth and when it stated that her testimony was "much more credible" than physical evidence, including DNA evidence.  *See Hodge*, 426 F.3d at 378; *see also Slagle*, 457 F.3d at 523 (finding the remark "Howard Bloxham is not going to come in here and tell you something that is not true" to be "clearly improper"); *United States v. Manthey*, 92 Fed. Appx. 291, 296 (6th Cir. 2004) (finding the remark "No question about it, he's telling the truth" to be "unquestionably improper").  Additionally, a prosecutor making the incredible statement that a child's testimony is more credible than DNA evidence could reasonably lead the jury to believe that the prosecutor has both "a personal belief

47

in the witness's credibility" and "special knowledge of facts not in front of the jury." *See Francis*, 170 F.3d at 550.

In a recent Ninth Circuit opinion, the court reiterated that a defendant is entitled to a jury that makes an independent judgment of the credibility of witnesses and that improper vouching skews the jury's ability to make an independent determination. *United States v. Weatherspoon*, 410 F.3d 1142, 1147 (9th Cir. 2005).  In the same opinion, the Ninth Circuit also considered remarks that witnesses were telling the truth:

> For any prosecutor to state his own view that witnesses are credible or not credible, or indeed to say flat out- three times over in rapid succession- that a witness "told the truth," rather than to invite the jury to make all of those determinations based on evidence to which the prosecutor points, cannot fairly be labeled as "no more than a comment on the evidence that one would expect in a hard-fought case such as this," or as "nothing more than an unremarkable comment based upon the evidence," or as "merely a comment on the evidence."

*Id.* at 1148. While the complained of remark during closing arguments may be fairly characterized as a comment on the evidence, the opening statement remarks could not be based on any evidence already presented to the jury.  Furthermore, because the remarks were made during the prosecution's opening, they cannot be excused for being "invited" or "responsive" to the defense.  *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986).  Since these opening remarks were improper, this Court must now consider the four factors to determine whether the remarks were flagrant enough to warrant habeas relief.

The first factor, whether the evidence against the defendant was strong, favors Rector. The State had no physical evidence against Rector and relied almost exclusively on the testimony of BV.  This leads into the second factor of whether the prosecutor's conduct tended to mislead the jury or prejudice the defendant.  Rector may have been prejudiced by these

48

remarks precisely because the only real evidence against him was the testimony of BV.

Credibility was of the utmost importance here and the prosecutor improperly vouched for BV's

credibility.  The Sixth Circuit has stated that improper vouching must be carefully guarded

against in cases turning on the credibility of witnesses, especially sexual abuse cases:

> Cases involving sexual abuse exert an almost irresistible pressure on the emotions of the bench and bar alike. Because such cases typically turn on the relative credibilities of the defendant and the prosecuting witness, however, a strict adherence to the rules of evidence and appropriate prosecutorial conduct is required to ensure a fair trial.

*Martin v. Parker*, 11 F.3d 613, 616-17 (6th Cir. 1993); *see also Hodge*, 426 F.3d at 377 n.19 (6th

Cir. 2005) (noting the "particular dangers posed by prosecutorial misconduct in sexual abuse

cases").  Prosecutorial misconduct was not carefully guarded against here, as Rector's trial

counsel did not object to the prosecutor's opening remarks.  Because of this failure, the jury was

not immediately instructed to disregard the vouching.  *See McMillan v. Castro*, 405 F.3d 405,

412 (6th Cir. 2005) (noting the importance of issuing curative instructions as soon as possible).

The third factor is whether the remarks were isolated or extensive.  The three improper

remarks here were isolated because they were limited to opening statements. *See Irick*, 565 F.3d

at 326 (improper comments limited to the rebuttal portion of the prosecutor's closing that were

not a principal part of the argument were not extensive); *but cf. Slagle*, 457 F.3d at 526-27

(noting that four improper comments in "closing argument that consumes over 100 pages of trial

transcript" was "arguably extensive," but the prosecutor "did not repeat certain tag lines or

commit the same error after an objection"); *see also Wilson v. Bell*, No. 06-12409, 2009 WL

960579, at *3 (E.D. Mich. Apr. 7, 2009) (finding four improper vouching comments limited to

rebuttal closing argument to be extensive).  The fourth factor, whether the comments were

deliberate or accidental, is unclear.  While repeated improper comments may suggest deliberateness, *Wilson*, 2009 WL 960579, at *3, "the prosecution may well not have realized its improper comments in the heat of argument because there was no defense objection." *Slagle*, 457 F.3d at 527.

Applying the proper test, the prosecutor's vouching remarks were certainly improper but not flagrant enough to warrant relief.  After all, "[p]rosecutorial vouching rarely warrants a new trial." *Smith v. Jones*, No. 07-2275, 2009 WL 973349, at *4 (6th Cir. Apr. 10, 2009).  It appears that *Wilson v. Bell*, *supra*, may be the first decision in the Sixth Circuit granting habeas relief for improper vouching.  *See Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) (noting that the court has never granted habeas relief on the basis of improper vouching).

> 2. Rector Has Not Shown That the State Appellate Court's Decision Regarding the Prosecutor's Alleged Denigration of Defense Witnesses Was an Unreasonable Application of Federal Law.

Rector also argues that "the State committed misconduct when it unfairly attacked the credibility of Dr. Marshall, the sole defense witness."  (Traverse at 29.)  Rector first cites to an exchange to argue that the State attacked his witness for lacking respect for nurse practitioners:

> A.  That nurse is not a physician.  She doesn't examine patients.
> Q.  Oh that's right.  As a doctor you don't have much respect for nurse/practitioners do you?
> A.  Respect doesn't have anything to do with it.
> Q.  You don't fell they are properly trained?
> A.  I didn't say that.

(Return, Ex. Trial Tr. at 254: 11-16.)  Rector then cites an exchange to argue that the State attacked his witness's credibility on the grounds that he had not examined the alleged victim:

> Q.  And when you examined [BV] that's what she told you?
> A.  I didn't examine her.  I was not permitted to examine her.
> Q.  Oh, you didn't examine her.  Okay.

50

A. I asked to examine her and I was told I could not.

(*Id.* at 255: 16-20.) Rector argues that the prosecutor was appealing to an anti-physician bias. (Petition at 25.)

The Magistrate Judge rejected this argument as frivolous and inconsequential: "The prosecutor's remarks were such patent attempts to twist the witness's words that they were far more likely to create hostility toward the prosecution than appeal to any supposed 'anti-physician bias.'" (R & R at 43.) The state appellate court did not specifically address these statements but dismissed them with many others as "so frivolous that they do not merit serious consideration." *Rector*, 2002 WL 32098116, at *11. Rector cites to no authorities in his Petition or Traverse to support his argument that these remarks even constitute misconduct, let alone that the state appellate court unreasonably applied federal law in disposing of this claim. In his objections, Rector makes the following attempt at a showing:

> "The following cases demonstrate that it is improper for the prosecution to unfairly attack or impugn the defense: *DeChristoforo*, 416 U.S. 637 (improper to make misleading comments regarding the defense); *Berger*, at 86 (the prosecutor made "improper insinuations and assertions calculated to mislead the jury.").

(Objections at 36.) Regardless of the fact that Rector did not even cite to these authorities until his Objections to the R & R, these cases do not demonstrate that the prosecutor's remarks in Rector's case were improper.

Having failed to satisfy the improper part of the Sixth Circuit's two-part test, this Court need not consider whether the remarks were flagrant. Therefore, Rector has not shown that the state appellate court's decision regarding the alleged denigration of his defense witness was contrary to or based on an unreasonable application of clearly established federal law.

51

3.    Rector Has Not Established That the Prosecutor's Statements Shifted the Burden of Proof or Were Otherwise Improper.

Rector also argues that the prosecutor attempted to shift the burden of proof at trial.  He cites to the following remarks of the prosecutor made during closing:

"Did any of the witnesses tell you why [B.V.] would make up a story that Tom Rector raped her?  You didn't hear that story.  You won't hear that story because there is no story of why [B.V.] would make up such a statement."  (Return, Ex. Trial Tr. at 275: 12-15.)

"There has not been one shred of testimony of why she would make this up."  (*Id.* at 277: 17-18.)

"You never heard them tell you that anything that [B.V.] went through prior to testifying here, anything she reviewed prior to testifying here, was inconsistent with anything that she had said before."  (*Id.* at 287: 12-15.)

"What you never heard was anything out of anyone during this trial that would say why [B.V.] would lie."  (*Id.* at 288: 1-3.)

(Petition at 26-27.)  Rector cites no authority in his Petition or Traverse to demonstrate that these comments were an attempt to shift the burden of proof or that the state appellate court's decision was unreasonable.  These statements are not improper; they are merely comments on the evidence, or lack thereof.

In his objections, Rector cites to two cases to support his proposition: *Griffin v. California*, 380 U.S. 609, 621 (1965) (Stewart, J., dissenting) (recognizing the comment on the refusal to testify implicates the prosecution's burden to prove guilt beyond a reasonable doubt); and *Wilson v. United States*, 149 U.S. 60, 66 (1893) (likewise recognizing that a *Griffin* violation implicates shifting the burden of proof: "Nothing could have been more effective with the jury to induce them to disregard entirely the presumption of innocence to which by the law he was

entitled").  These cases deal with *Griffin* violations; they are irrelevant.  Rector has not

demonstrated that the statements made at his trial were improper or flagrant.

> 4. <u>Rector Has Not Demonstrated How the State Court Unreasonably Applied Federal Law in Deciding That the Prosecutor's Statements Did Not Appeal to Juror Passion.</u>

Rector also contends that the prosecution improperly appealed to the passions of the

jurors and urged them to decide the case on some other facts or basis than the evidence presented

at trial.  He cites two instances, in opening and closing arguments respectively: "The only verdict

that protects [BV] and other children like her, and that's a verdict of guilty of five counts of

rape" and "This has been very difficult for you I'm sure but we ask that you bring back the only

verdict that will protect that little girl."  (Return, Ex. Trial Tr. at 66: 18-19, 289: 16-18.)  As the

state appellate court observed:

> . . . Rector complains of what the prosecutor said in closing argument.  However, a brief review of the statements show the prosecutor doing the proper thing in that context, arguing the case.  "In our adversarial system, prosecutors are not only permitted but also encouraged to argue fervently for conviction."  *State v. Wilson* (Apr. 19, 2002), 1st Dist. No. C-000670, at 6.  A prosecutor does not commit misconduct when vouching for the integrity of the state's case or by arguing for a conviction to foreclose future criminal conduct.  *State v. Nolan* (1992), 78 Ohio App.3d 564, 571 605 N.E.2d 480.  Thus, Rector's arguments relating to these incidents are meritless.

*Rector*, 2002 WL 32098116, at *10-11.  As the Magistrate Judge points out, Rector cites

no holding of the Supreme Court to show that the state court erred in finding that the prosecution

did not commit misconduct in making these statements.  (R & R at 42.)  Rector did not even cite

*any* case in his Petition or Traverse to support his argument that the prosecutor's statements

appealed to the jury's passions.

These statements were not "calculated to inflame the minds of the jurors" and were not

improper.  *See Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).  Rectors objections to

the Magistrate's R & R regarding this alleged form of prosecutorial misconduct are meritless.  In

his objections, Rector makes accurate statements of the law but does not even attempt to

demonstrate how the law applies to his case.  The following is the full extent of his argument:

> Claims based upon improper appeals to juror passion and bias have been found not to be
> frivolous.  *See e.g.*, *Viereck v. United States*, 318 U.S. 236 (1943), applied in *United
> States v. Solivan*, 937 F.2d 1146, 1152-55 (6th Cir. 1991).

> The following cases demonstrate that it is improper for the prosecution to urge the jury to
> decide the case on some other facts or basis than the evidence presented at trial: *Young*,
> 470 U.S. at 5-6, 14; *Berger*, 295 U.S. at 88.

(Objections 34-35.)  These authorities are generally relevant to Rector's argument but do not

specifically show how the prosecutor's statements in his case were improper or how the state

court erred in its determination.

    5.    <u>Rector Has Not Demonstrated How the Cumulative Effect of the Alleged
Instances of Prosecutorial Misconduct Warrant Him Relief.</u>

Rector further objects to an alleged analytical error in the state appellate court decision

and the Magistrate Judge's recommendation: they "analyzed each claimed instance of

misconduct individually and isolated from the entirety of the record."  (*Id.* at 34.)  Rector argues

in his Traverse that the trial was short, lasting only seven hours, and that the improper statements

of the prosecutor permeated the trial from opening to closing arguments.  (Traverse at 31.) While

it is true that "the effect of prosecutorial misconduct can be adequately judged only in the larger

context of an entire trial, especially because one of the factors for reviewing such claims is

whether the alleged misconduct was isolated or part of a larger pattern in light of the totality of

the circumstances," *Nields v. Bradshaw*, 482 F.3d 442, 452 (6th Cir. 2007) (internal quotations

omitted), all of the courts to review Rector's arguments for prosecutorial misconduct found the

arguments to be basically frivolous.  Rector has not demonstrated how these remarks were improper or how the cumulative effect of these remarks denied him a fair trial.

Finally, the trial court repeatedly provided instructions designed to cure any improper statements of the prosecution.  Prior to opening statements, the court instructed the jury:

> This point in the proceedings are known as opening statements ladies and gentlemen, that's when counsel will outline what they think the evidence is going to be in this case and as I previously admonished you, what your [sic] about to hear from the attorneys is just argument.  It is not evidence, will not ever be consider [sic] by you as evidence for any purpose at any time.  You understand that?

(Return, Ex. Trial Tr. at 61: 17-20, 62: 1-2.)  Prior to closing arguments, the trial court instructed the jury as follows:

> At this point in the proceedings the evidence is closed.  We have reviewed the Jury Instructions and at this point the attorneys will provide you with their closing arguments, and as I indicated yesterday, what you're about to hear from the attorneys is not evidence, will not be considered by you as evidence for any purpose, when you retire to deliberate on this case.

(*Id.* at 271: 8-13.)  In its final instructions, the trial court instructed the jury as follows:

> Evidence does not include the Indictment, opening statements or closing arguments of the lawyers.  Statements that were stricken by the Court or which you were instructed to disregard, if any, are also not evidence, and must be treated as though you never heard them.  You must not speculate as to why the Court sustained an objection to any questions, or what the answer to that question might have been.  You may not draw any inference or speculate on the truth of any suggestion included in any question that was not answered.

(*Id.* at 292: 8-14.)  The jury is presumed to follow the instructions of the court, and the instructions given to Rector's jury were sufficient to cure any impropriety, including improper vouching.  *See e.g.*, *Lyell v. Renico*, 470 F.3d 1177, 1189 (6th Cir. 2006) (recognizing "the well-accepted presumption that juries may be presumed to follow all jury instructions").

In sum, the parties and the Magistrate Judge failed to apply the proper standard to Rector's claims of prosecutorial misconduct.  The only non-frivolous claim of misconduct, however, is the improper vouching of the prosecutor during opening statements.  Rector has not demonstrated that these remarks are flagrant enough to justify granting habeas relief.  For these reasons, the analysis for this ground for relief is modified in part to apply the proper test, but the ground is still overruled.

### E.    Ground Seven: Claims of Cumulative Error Cannot Support Habeas Relief.

In his seventh ground for relief, Rector argues that the cumulative effect of the errors in his trial deprived him of his right to due process and a fundamentally fair trial under the Fourteenth Amendment.  The Magistrate Judge determined that the effect of cumulative errors is not a basis for granting habeas relief.  Rector objects, arguing that the Supreme Court has implicitly recognized a cumulative-effect claim.

As the Magistrate Judge correctly determined, the Sixth Circuit has definitively decided in *Moore v. Parker* that courts reviewing a habeas petition may not consider cumulative trial errors in determining whether relief should be granted:

> Moore claims he is entitled to relief because of cumulative trial errors.  But we have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.  *See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (death penalty decision stating, "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.").

> Moore cites *Walker v. Engle* for the proposition that cumulative evidentiary errors can warrant habeas relief.  703 F.2d 959, 963 (6th Cir. 1983).  But *Walker* is pre-AEDPA, and is not Supreme Court precedent, as AEDPA requires.  *See Lorraine*, 2921 F.3d at 447 (noting *Walker* was pre-AEDPA and refusing to consider errors cumulatively).  Because Moore can cite no Supreme Court precedent obligating the state court to consider the alleged trial errors cumulatively, we cannot grant relief on this ground. FN4

FN4. Two of this court's unpublished post-AEDPA decisions state, in dicta, that the court may consider cumulative error in capital cases.  *See Davis v. Burt*, 100 Fed. Appx. 340, 351 n.1 (6th Cir. 2004); *Eskridge v. Konteh*, 88 Fed. Appx. 831, 836 n.1 (6th Cir. 2004).  But these cases directly contradict our binding *Lorraine* precedent, and we expressly repudiate them today.

*Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *see also Cross v. Stovall*, 238 Fed. Appx. 32, 41 (6th Cir. 2007) (holding that cumulative error claims are not cognizable on habeas review); *but cf. Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc) (death penalty case where the Sixth Circuit explicitly did not decide whether courts may consider cumulative error in reviewing

a habeas petition).

Since it is clear from Sixth Circuit precedent that cumulative error claims may not be grounds for habeas relief, except for possibly capital cases, Rector's seventh ground for relief must be overruled.  Rector's argument that the Supreme Court has implicitly recognized cumulative-effect claims is without merit.  In support of this proposition, Rector cites to two Supreme Court cases, *Greer v. Miller*, 483 U.S. 756 (1987) and *Brecht v. Abrahamson*, 507 U.S. 619, 638 n.9 (1993).  (Objections at 36-37.)  Both of Rector's quoted passages are pre-AEDPA dicta that refer to the *possibility* that in *extraordinary* or *unusual* cases errors *may* be combined to warrant habeas relief if the integrity of the proceedings is called into question; this is certainly not clearly established federal law.  The Magistrate Judge's recommendation to overrule Ground Seven, therefore, must be adopted.

**CONCLUSION**

For the foregoing reasons, the Court adopts in part, and modifies in part the Magistrate Judge's well-reasoned Report and Recommendation.  Therefore, the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody is denied.

Since Petitioner has not made a substantial showing of a denial of a constitutional right directly related to his conviction or custody, the Court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

**DATE: June 23, 2009**             **s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**